The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John D. JONES, Defendant–Appellant.

No. 04CA0492.

Colorado Court of Appeals, Div. II.

June 1, 2006.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kathy Goudy, Carbondale, Colorado, for Defendant–Appellant.

ROTHENBERG, J.

Defendant, John D. Jones, appeals the judgment of conviction entered on jury verdicts finding him guilty of criminal attempt to commit second degree burglary, §§ 18–2–101, 18–4–203, C.R.S.2005; intimidating a victim, § 18–8–704, C.R.S.2005; and menacing, § 18–3–206, C.R.S.2005. We affirm.

Defendant lived in a mobile home park that provided a common shower building for its residents. He was arrested for indecent exposure following a complaint by the victim that his shower robe and thong were too skimpy to cover the lower part of his body when he walked to the common shower building.

About two weeks after his arrest, defendant approached the victim's mobile home, banged loudly on the door and windows, accused her of lying to the police, and threatened to beat her in front of her children. During this altercation, defendant damaged the victim's front door.

Another resident of the mobile home park witnessed defendant yelling and persuaded him to leave the victim's home before police officers arrived. Defendant was later arrested and charged with attempted burglary, intimidating a witness, and menacing. At trial, he was acquitted of the indecent exposure count.

I.

Relying on the Expatriation Act of 1868, 15 Stat. 223, defendant contends the trial court lacked personal jurisdiction over him. According to defendant, he expatriated from the United States before his arrest for the crimes committed in Colorado and is therefore not subject to the laws of this state. We disagree.

We review de novo the legal issue of whether a court may exercise personal jurisdiction over a defendant. *Archangel Dia-*

*mond Corp. v. Lukoil,* 123 P.3d 1187 (Colo. 2005); *In re Marriage of Malwitz,* 99 P.3d 56 (Colo.2004).

### A. Expatriation Laws

■ Expatriation is the voluntary renunciation or abandonment of nationality and allegiance. *Perkins v. Elg,* 307 U.S. 325, 334, 59 S.Ct. 884, 889, 83 L.Ed. 1320 (1939); *see Mandoli v. Acheson,* 344 U.S. 133, 73 S.Ct. 135, 97 L.Ed. 146 (1952); *Estate of Lyons v. Comm'r of Internal Revenue,* 4 T.C. 1202, 1945 WL 192 (1945); Renee S. Liu, *The Expatriate Exclusion Clause: An Inappropriate Response to Relinquishing Citizenship for Tax Avoidance Purposes,* 12 Geo. Immigr. L.J. 689 (1998).

Under the common law, no citizen or subject had the power to renounce his or her allegiance without the sovereign's consent. *Estate of Lyons v. Comm'r of Internal Revenue, supra,* 4 T.C. at 1208–09 (citing *Shanks v. Dupont,* 28 U.S. (3 Pet.) 242, 7 L.Ed. 666 (1830)).

However, later decisions in the United States deviated from the common law rule, and on July 27, 1868, Congress enacted a statute declaring that expatriation was the natural and inherent right of all people. An Act Concerning the Rights of American Citizens in Foreign States, ch. 249, 15 Stat. 223 (1868)(current version at 8 U.S.C. § 1481 (2005) ). This Act, commonly referred to as the Expatriation Act of 1868, proclaimed that "the right of expatriation is a natural and inherent right of all people, indispensable to the enjoyment of the rights of life, liberty, and the pursuit of happiness." The stated purpose of the Act was to protect naturalized citizens of the United States while in foreign jurisdictions, and it did not define the manner in which such expatriation could take place.

Congress later enacted the Expatriation Act of 1907 in response to requests from the executive branch to define the manner in which a United States citizen would lose citizenship. Act of Mar. 2, 1907, 34 Stat. 1228.

By 1940, the 1907 Act had been repealed, and the Expatriation Act of 1868 was reenacted. 8 U.S.C. § 800. In 1940, Congress enacted the Nationality Act, 54 Stat. 1137, to codify the nationality laws. The Nationality Act expanded the grounds for loss of nationality to include engaging in military or government service for a foreign government; voting in a foreign political election; formally renouncing citizenship; deserting the armed forces in time of war; treason; and residence for a specified time in foreign countries by naturalized citizens. Nationality Act of 1940, §§ 401–409.

■ Later, Congress enacted the Immigration and Nationality Act of 1952, 8 U.S.C. § 1481, which incorporated the Expatriation Act of 1868 and the Nationality Act of 1940 and expanded the grounds for loss of nationality. It is now "well settled that an American citizen loses his citizenship only if he voluntarily renounces it and performs one of the acts of expatriation listed in [8 U.S.C. § 1481]." *Estate of Vriniotis v. Comm'r of Internal Revenue,* 79 T.C. 298, 304, 1982 WL 11136 (1982); *see Estate of Lyons v. Comm'r of Internal Revenue, supra,* 4 T.C. at 1208–09.

Contrary to defendant's contention, there is no language in the Expatriation Act of 1868, the Nationality Act of 1940, or the Immigration and Nationality Act of 1952 suggesting that Congress intended to immunize expatriated defendants from criminal charges committed within the United States. The current version of the Expatriation Act of 1868, 8 U.S.C. § 1481, provides in its entirety:

> (a) A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality—
>
> (1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or
>
> (2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or

(3) entering, or serving in, the armed forces of a foreign state if (A) such armed forces are engaged in hostilities against the United States, or (B) such persons serve as a commissioned or non-commissioned officer; or

(4)(A) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years if he has or acquires the nationality of such foreign state; or

(B) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years for which office, post, or employment an oath, affirmation, or declaration of allegiance is required; or

(5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

(6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense; or

(7) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, violating or conspiring to violate any of the provisions of section 2383 of Title 18, or willfully performing any act in violation of section 2385 of Title 18, or violating section 2384 of Title 18 by engaging in a conspiracy to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction.

(b) Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after September 26, 1961 under, or by virtue of, the provisions of this chapter or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence. Any person who commits or performs, or who has committed or performed, any act of expatriation under the provisions of this chapter or any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily.

### B. Colorado Jurisdiction

■ Personal jurisdiction is the court's power to subject a particular defendant to the decisions of the court. *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109 (Colo. 1991).

■ In Colorado, a person is subject to prosecution in any Colorado district court if he or she commits an offense wholly or partly within the state. *See* § 18–1–201, C.R.S. 2005; *People v. Brown,* 70 P.3d 489 (Colo. App.2002). The physical presence of the defendant in court is sufficient to confer jurisdiction over that person. *See Chatfield v. Colo. Court of Appeals,* 775 P.2d 1168 (Colo. 1989); *Bell v. Bower,* 199 Colo. 195, 606 P.2d 74 (1980). *See* 4 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 16.4(c) at 571–72 (1999)("Under the common law, the exclusive grounding of state jurisdiction is the territorial principle: a state has power to make conduct or the result of conduct a crime only if the conduct takes place or the result happens within its territorial limits").

In *People v. Pozo,* 746 P.2d 523 (Colo. 1987), the supreme court concluded the defendant, a Cuban citizen legally residing in the United States, received ineffective assistance of counsel because he was not advised that his guilty plea could result in his deportation. There was no suggestion, however, that the court lacked personal jurisdiction over him because of his nationality. *Accord People v. Walford,* 746 P.2d 945

(Colo.1987)(British national legally residing in United States); *People v. Nguyen,* 80 P.3d 903 (Colo.App.2003)(legal alien); *cf. Ker v. Illinois,* 119 U.S. 436, 440–43, 7 S.Ct. 225, 227–29, 30 L.Ed. 421 (1886)(fact that Peruvian citizen was brought to United States against his will did not divest state court of jurisdiction).

■ Here, defendant objected to the court's personal jurisdiction over him based on his alleged expatriation. However, he cites no authority, and we have found none, supporting his contention that the Expatriation Act of 1868 removes jurisdiction from a state court in a criminal prosecution where, as here, the offense was committed within that state.

Accordingly, we reject his argument that the trial court lacked personal jurisdiction over him for crimes he committed in Colorado. *See* § 18–1–201; *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993)(when interpreting a federal statute, judicial inquiry is complete if the language of the statute is clear and unambiguous and the intent of Congress is clear); *Rubin v. United States,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *City of Grand Junction v. Ute Water Conservancy Dist.,* 900 P.2d 81 (Colo.1995).

## II.

Defendant next contends the evidence was insufficient to sustain his convictions. Again, we disagree.

■ In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Carrasco,* 85 P.3d 580 (Colo.App.2003).

## A. Intimidating a Witness

Section 18–8–704, as relevant here, provides:

(1) A person commits intimidating a witness or victim if, by use of a threat, act of harassment as defined in section 18–9–111, or act of harm or injury to any person or property directed to or committed upon a witness or a victim to any crime, a person he or she believes has been or is to be called or who would have been called to testify as a witness or a victim ... or any person who has reported a crime or who may be called to testify as a witness to or victim of any crime, he or she intentionally attempts to or does:

. . .

(d) Inflict such harm or injury prior to such testimony or expected testimony.

■ Here, the evidence showed that the victim contacted the police to report defendant for indecent exposure and that he was arrested as a result of her complaint. Defendant testified that he knew she had filed the complaint and was a potential witness against him.

The victim testified that about two weeks after the initial charge was filed against defendant, he pounded on the doors and windows of her home, yelled obscenities about her, and threatened to beat her in front of her children. The victim's neighbor similarly testified that defendant pounded on the victim's doors and windows and threatened to kill her.

We conclude this evidence, viewed in the light most favorable to the prosecution, is sufficient to support defendant's conviction for intimidating a witness.

## B. Attempted Second Degree Burglary

Section 18–4–203(1), C.R.S.2005, provides that "[a] person commits second degree burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property."

**330**

The evidence here showed that defendant damaged brackets on a locking mechanism when he tried to open victim's locked door and that he also threatened to beat or kill the victim in front of her children. This evidence is sufficient to support defendant's conviction for criminal attempt to commit second degree burglary of a dwelling. *See* §§ 18–2–101, 18–4–203; *People v. Germany,* 643 P.2d 776 (Colo.App.1980).

### C. Menacing

Section 18–3–206(1), C.R.S.2005, provides that "[a] person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury."

As stated above, there was evidence that defendant yelled at the victim while pounding on her doors and windows, and the victim's neighbor testified that defendant threatened to kill the victim. Although it is not necessary to prove actual fear on the part of the victim, *see People v. Dist. Court,* 926 P.2d 567 (Colo.1996), here, the victim testified that she "thought [defendant] was going to come in and·kill [her] in front of [her] kids."

This evidence is sufficient to support defendant's conviction for menacing. *See People v. Dist. Court, supra.*

Judgment affirmed.

Judge ROY and Judge HAWTHORNE concur.