2013 COA 11

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Timothy Charles HOUSER,
Defendant–Appellant.**

**No. 09CA2147.**

Colorado Court of Appeals,
Div. IV.

Jan. 31, 2013.

Rehearing Denied April 18, 2013.

John W. Suthers, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Lynn Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

¶ 1 Defendant, Timothy Charles Houser, appeals the judgment of conviction entered on a jury verdict finding him guilty of patronizing a prostituted child. We affirm and remand for correction of the mittimus.

## I. Background

¶ 2 A.J. was arrested in Denver and charged with prostitution, soliciting for the purpose of prostitution, and possession of a controlled substance. She was then sixteen years old. A.J. told police that the night before her arrest, she had gone to defendant's home in Douglas County where he paid her $240 to engage in sexual acts with him. Because of her cooperation, Denver authorities allowed A.J. to plead guilty to a prostitution charge, a class three misdemeanor, and dropped the possession charge, a class three felony. She received a deferred adjudication.

¶ 3 Based on A.J.'s statements, defendant was charged in Douglas County with patronizing a prostituted child in violation of section 18–7–406, C.R.S.2012, and another offense that was dismissed before trial. At trial, A.J. testified that she had come to Denver from Washington to earn money through prostitution. Upon arrival, she posted a notice on Craigslist identifying herself as a twenty-year-old "playmate."

¶ 4 The prosecution entered into evidence three emails from defendant, the validity of which he did not dispute.

- The first email responded to A.J.'s posting by requesting "references" and wanting to "schedule for tomorrow," if the references "look good."

- The second email, sent in response to a potential client trying to find A.J., said that defendant was "just a tiny bit unsure [a]bout [A.J.'s] age".

- The third email, sent the day after A.J. had been to defendant's home, said that she was "the real deal," made an "[o]utcall all the way to Parker," performed "great utf, [was] very enthusiastic and FTF." Prosecution witnesses testified that "utf" and "FTF" were abbreviations frequently used on the Internet to describe the sexual acts that A.J. testified she had performed for money.

Defendant did not testify.

## II. Affirmative Defense

¶ 5 Defendant first contends the trial court erred by precluding him from raising the defense that he reasonably believed A.J. was at least eighteen years old. We reject this contention.

¶ 6 After defendant gave notice before trial of his intent to assert this defense, the trial court ruled that section 18–7–407, C.R.S. 2012,[1] prevented defendant from offering a reasonable belief defense, notwithstanding broad language in section 18–1–503.5(1), C.R.S.2012,[2] permitting such a defense. Following this ruling, defendant's theory at trial was that, although he had paid A.J., he did not engage in sexual acts with her because she could not verify her age.

### A. Sufficiency of Evidence to Support the Affirmative Defense

¶ 7 As a preliminary matter, we reject the Attorney General's assertions that we may affirm without construing the statutes, *see* *People v. Eppens,* 979 P.2d 14, 22 (Colo.1999) ("[A] party may defend the judgment of the trial court on any ground supported by the record."), on the grounds that no credible

---

1. "In any criminal prosecution under sections 18–7–402 to 18–7–407, it shall be no defense that the defendant did not know the child's age or that he reasonably believed the child to be eighteen years of age or older." § 18–7–407, C.R.S. 2012.

2. "If the criminality of conduct depends on a child being younger than eighteen years of age and the child was in fact at least fifteen years of age, it shall be an affirmative defense that the defendant reasonably believed the child to be eighteen years of age or older. This affirmative defense shall not be available if the criminality of conduct depends on the defendant being in a position of trust." § 18–1–503.5(1), C.R.S.2012.

evidence supported such a defense, and defendant could not assert the defense because he denied at trial having engaged in sexual acts with A.J.

### 1. Standard of Review

¶ 8 "[T]o present an affirmative defense for jury consideration, the defendant must present some credible evidence on the issue involving the claimed defense. Whether the defendant meets this burden of going forward is a question of law for the trial court, and we therefore review the sufficiency of the defendant's evidence de novo." *People v. Garcia,* 113 P.3d 775, 783–84 (Colo. 2005) (citations omitted). This inquiry considers the evidence in the light most favorable to the defendant. *People v. Green,* 2012 COA 68, ¶ 14, 296 P.3d 260.

### 2. Law

¶ 9 Evidence supporting an affirmative defense "may come from any source, even from the prosecution." *People v. Whatley,* 10 P.3d 668, 670 (Colo.App.2000). The burden to produce sufficient evidence is "exceedingly low," making preclusion of an affirmative defense appropriate only when there is "simply no evidence ... in th[e] record." *People v. Platt,* 170 P.3d 802, 806 (Colo.App. 2007), *aff'd,* 201 P.3d 545 (Colo.2009); *see People v. DeWitt,* 275 P.3d 728, 733 (Colo. App.2011) (applying the "scintilla of evidence standard" to the defendant's burden of proof).

### 3. Application

¶ 10 Here, the record contains sufficient evidence to support a reasonable belief defense, if it is statutorily available. A.J. testified at trial that she presented herself to clients as a twenty-year-old, which was confirmed by evidence of her online postings. These postings included photographs of A.J., which, if viewed in the light most favorable to defendant, could portray a person at least eighteen years of age.

¶ 11 Further, defendant's position at trial—that he never engaged in sexual acts with A.J.—did not preclude the affirmative defense. The Attorney General's reliance on

*People v. Villarreal,* 131 P.3d 1119, 1128 (Colo.App.2005), is misplaced. In *Villarreal,* the division concluded that the trial court's failure to instruct the jury sua sponte on heat of passion mitigation was not plain error. *Id.* at 1127–28. Plain error did not occur because the instruction would have been contrary to the theory of the case that defendant chose to offer at trial, and the instruction would have been inappropriate, given that "no evidence was presented" which would support mitigation. *Id.* at 1128.

¶ 12 Here, defendant intended to argue at trial that he was not guilty because he reasonably believed A.J. was at least eighteen years old. However, the pre-trial ruling forced him to present a different theory. Thus, it was the trial court's ruling, and not defendant's strategic choice, which explains his position that he never engaged in sexual acts with A.J. And, unlike in *Villarreal,* sufficient evidence was presented at trial to support the reasonable belief defense.

¶ 13 Therefore, we turn to the statutory conflict.

### B. Statutory Conflict Between Sections 18–1–503.5(1) and 18–7–407

¶ 14 We conclude, in a matter of first impression, that section 18–7–407 prevents a defendant from offering a reasonable belief in age defense to a charge of patronizing a prostituted child.

### 1. Standard of Review

¶ 15 Appellate courts review questions of statutory interpretation de novo. *Vaccaro v. Am. Family Ins. Group,* 2012 COA 9, ¶ 15, 275 P.3d 750.

### 2. Law

¶ 16 When construing a statute, a court's primary goal is to effectuate the intent of the General Assembly. *Martin v. People,* 27 P.3d 846, 851 (Colo.2001). This requires both "read[ing] and consider[ing the statute] as a whole and ... giv[ing] consistent, harmonious, and sensible effect to all its parts." *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000) (internal quotations omitted).

¶ 17 When two provisions irreconcilably conflict, "the specific provision prevails over the general provision .... unless the general statute was enacted more recently than the specific statute, *and* the legislature manifestly intends that the later-enacted general statute prevail over the earlier-enacted specific statute." *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 241–42 (Colo.2009) (emphasis in original); *accord Gessler v. Doty*, 2012 COA 4, ¶ 13, 272 P.3d 1131 (quoting § 2–4–205, C.R.S.2012); *People v. Falls*, 58 P.3d 1140, 1141 (Colo.App.2002).

### 3. Application

#### a. Statutory Conflict

¶ 18 Under section 18–1–503.5(1), which applies generally to offenses under the criminal code, "[i]f the criminality of conduct depends on a child being younger than eighteen years of age and the child was in fact at least fifteen years of age, it shall be an affirmative defense that the defendant reasonably believed the child to be eighteen years of age or older." But under section 18–7–407, which applies specifically to acts of child prostitution, "it shall be no defense that the defendant did not know the child's age or that he reasonably believed the child to be eighteen years of age or older."

¶ 19 These two provisions conflict. While one provision mandates that the court allow a reasonable belief defense when the victim is at least fifteen years old, the other expressly prohibits such a defense. *See People v. Clark*, 654 P.2d 847, 848 (Colo.1982) ("[T]he use of the word 'shall' in a statute usually is deemed to involve a mandatory connotation."); *City of Colorado Springs v. Bd. of County Comm'rs*, 895 P.2d 1105, 1117–18 (Colo.App.1994) (finding that two provisions conflict when harmonization would effectively nullify one of them). Thus, to resolve this conflict, we consider the statute's legislative history to determine legislative intent. *See Rowe v. People*, 856 P.2d 486, 489 (Colo.1993) (looking to legislative history to determine legislative intent); *People v. Carrillo*, 2013 COA 3, ¶ 23, 297 P.3d 1028 (turning to "other statutory aids" when the plain text of statutes conflicts).

#### b. Manifest Intent

¶ 20 The General Assembly's intent is "manifest" only when such intent is "clear and unmistakable." *See Falls*, 58 P.3d at 1142 (holding that a general statute should not be interpreted as repealing a specific statute "[a]bsent clear and unmistakable legislative intent to the contrary").

¶ 21 In 2001, the General Assembly passed the Criminal Substantive Omnibus Bill, which changed many unrelated areas of the Criminal Code. One of these changes added section 18–1–503.5(1), the first sentence of which had been in the section of the criminal code relating to "unlawful sexual behavior," to the article containing "provisions applicable to offenses generally." Ch. 243, sec. 5, § 18–3–406, 2001 Colo. Sess. Laws 859. The legislature also added a second sentence in 2007, saying that the affirmative defense permitted by the section "shall not be available if the criminality of conduct depends on the defendant being in a position of trust." Ch. 383, sec. 4, § 18–1–503.5(1), 2007 Colo. Sess. Laws 1687.

¶ 22 The text of section 18–1–503.5(1) is silent whether it is intended to repeal conflicting provisions in the code or whether those conflicting provisions should control. However, the sentence exempting use of the defense when the defendant held a position of trust suggests that the General Assembly intended the defense to apply in all other cases. *See Marcellot v. Exempla, Inc.*, 2012 COA 200, ¶ 22, 317 P.3d 1275 ("[T]he fact that the legislature expressly provided only two exceptions to the statute's broad reach implies that no other exceptions were intended."). And moving the provision to the article containing "provisions applicable to offenses generally" suggests that the General Assembly intended it to apply broadly. *See Carrillo*, ¶ 20 (interpreting the word "offense" in a statute to suggest broad application); *cf. Black's Law Dictionary* 1186 (9th ed. 2009) (defining "offense" as a "violation of the law").

¶ 23 Portions of the legislative history also support the interpretation that the section was intended to apply to all types of crimes where criminality depends on a victim's age.

During a 2001 committee hearing, one House sponsor said that the purpose of moving the provision was to "go[ ] along" with recent court precedent holding that the affirmative defense now found in section 18–1–503.5(1) applied to an offense in a different part of the Criminal Code. *See Gorman v. People,* 19 P.3d 662, 667 (Colo.2000) (holding that the former section 18–1–503.5(1) applies when the "criminality of conduct depends upon a child being a certain age"). Similarly, one of the witnesses testified before the House committee that the provision should be moved in response to a recent Court of Appeals case, to clarify that the defense was meant to apply to "all types of crimes where the age of the victim being under eighteen was an issue."

¶ 24 But other portions of the legislative history support a more narrow view. In the committee hearing, the same House sponsor said that the affirmative defense provision was only intended to apply to crimes where criminality attaches solely because of the victim's age. He offered the example of providing tobacco to minors: giving a cigarette to a fellow House committee member would not be criminal conduct, while giving the same cigarette to a minor would be criminal. Because commercialized sex is criminal regardless of the worker's age, this comment suggests that the General Assembly did not intend to provide a new affirmative defense to crimes involving child prostitution.

¶ 25 Additionally, while discussing an amendment to what would become section 18–1–503.5, several members of the House Criminal Justice Committee expressed concern over significantly altering criminal justice policy in an omnibus bill. Rather, they believed that such changes should be made in stand-alone bills, which could be separately discussed and evaluated. And the presenting House sponsor introduced the relevant section of the bill by saying it was intended to "clarif[y]" the law and "doesn't change very much." These comments suggest that the General Assembly did not intend to alter the defenses available to defendants charged

with child prostitution, as this would be a substantial change to the previous law.

¶ 26 Most importantly, the effect of section 18–1–503.5(1) on section 18–7–407, which had remained unchanged since reenactment in 1979, was not mentioned in the committee or floor debates in either the House or the Senate. Therefore, the legislative history is not so "clear and unmistakable" to show that the General Assembly manifestly intended section 18–1–503.5(1) to control the specific provision, section 18–7–407.

¶ 27 Accordingly, we conclude that the latter section precluded defendant from offering a reasonable belief in age defense. Having discerned a basis on which to resolve the statutory conflict, the rule of lenity does not apply. *See People v. Sorrendino,* 37 P.3d 501, 503 (Colo.App.2001) (applying the rule of lenity only "[i]f, after having employed the various aids to statutory construction, we are still unable to discern controlling legislative intent").

## III. Unpreserved Vagueness Challenge

¶ 28 Defendant next contends that because section 18–7–401(6) does not clearly define the acts prohibited, it is unconstitutionally vague on its face. He concedes "this issue is unpreserved," but asserts the issue should be considered for the first time on appeal because "divisions of this Court and the Supreme Court have elected to address challenges raised for the first time on appeal in numerous cases." On the particular circumstances presented, we decline to do so.

¶ 29 This concession "raises the question of the extent to which defendant is entitled to appellate review of this issue." *People v. Allman,* 2012 COA 212, ¶ 14, 321 P.3d 557. The *Allman* division recognized "two lines of authority in Colorado on this question in criminal cases." *Id.; see People v. Greer,* 262 P.3d 920, 932 (Colo.App.2011) (describing Colorado law on reviewing an unpreserved constitutional challenge as in a "muddled state.") (J. Jones, J., specially concurring).[3]

---

**3.** In contrast, most federal circuits review for plain error a constitutional challenge to a statute raised for the first time on appeal. *See, e.g., United States v. Wright,* 607 F.3d 708, 715 (11th

Cir.2010); *United States v. Vilches–Navarrete,* 523 F.3d 1, 20 (1st Cir.2008); *United States v. Williams,* 410 F.3d 397, 400 (7th Cir.2005); *United States v. Letts,* 264 F.3d 787, 789 (8th

¶ 30 The position that a constitutional challenge to a statute should not be entertained for the first time on appeal derives from *People v. Lesney,* 855 P.2d 1364, 1366 (Colo. 1993) (holding that a constitutional challenge to a statute "is not properly preserved for appellate review if, as here, it is not presented to the trial court and is raised for the first time on appeal"), and *People v. Cagle,* 751 P.2d 614, 619 (Colo.1988) (stating in dictum that "[i]t is axiomatic that this court will not consider constitutional issues raised for the first time on appeal"). This position has been adopted by most divisions of this court.[4]

¶ 31 A few more recent cases, however, have suggested that such an issue may be taken up for the first time on appeal in the division's discretion. *See, e.g., Allman,* ¶ 17 (vagueness); *People v. Devorss,* 277 P.3d 829, 834 (Colo.App.2011) (same); *Greer,* 262 P.3d at 929 (double jeopardy). These cases rely on *Hinojos–Mendoza v. People,* 169 P.3d 662, 667–68 (Colo.2007) (exercising discretion to review unpreserved challenge to constitutionality of statute both facially and as applied, "particularly in light of the fact that doing so will promote efficiency and judicial economy"), and the discretionary wording of Crim. P. 52(b) ("Plain errors or defects affecting substantial rights *may* be noticed although they were not brought to the attention of the court.") (emphasis added). *See also People v. Tillery,* 231 P.3d 36, 47 (Colo.App.2009) (relying on federal double jeopardy law), *aff'd sub nom. People v. Simon,* 266 P.3d 1099 (Colo.2011).

¶ 32 Although "we are bound to follow supreme court precedent," *People v. Gladney,* 250 P.3d 762, 768 (Colo.App.2010), these competing lines of authority present a dilemma only if *Cagle* and *Lesney* establish a

categorical rule from which our supreme court has not departed. *Cagle* does not establish such a rule because the oft-quoted admonition against taking up constitutional issues raised for the first time on appeal was dictum. *See Horrell v. City of Aurora,* 976 P.2d 315, 316 (Colo.App.1998) (declining to follow statement in supreme court case that was "merely dictum"). And *Lesney* has never been cited by our supreme court in declining to review an unpreserved constitutional issue.

¶ 33 While *Hinojos–Mendoza* cited *Cagle,* it took up the constitutional confrontation issue as a matter of discretion. *But see Martinez v. People,* 244 P.3d 135, 139 (Colo. 2010) ("As a threshold matter, however, appellate courts should not reach Colorado Constitutional arguments raised for the first time on appeal.") (citing *Cagle* ); *People v. McMurtry,* 122 P.3d 237, 241 (Colo.2005) ("In addition, a defendant may only raise the improper denial of his constitutional right to a speedy trial on appeal if he raised it first in the trial court.") (citing *Cagle* ); *City & County of Broomfield v. Farmers Reservoir and Irrigation Co.,* 239 P.3d 1270, 1276 (Colo.2010) ("We do not consider constitutional issues raised for the first time on appeal.") (citing *Cagle* ).

¶ 34 In *Justus v. State,* 2012 COA 169, 337 P.3d 1219, the division faced a similar problem of reconciling older and more recent supreme court authority. The division chose to follow the more recent cases, which recognized considerations that earlier cases "apparently did not regard as relevant." *Id.* at ¶ 50. As pertinent here, *Hinojos–Mendoza* considers judicial economy, which is not mentioned in either *Cagle* or *Lesney.*

---

Cir.2001); *United States v. Suarez,* 263 F.3d 468, 476 (6th Cir.2001); *United States v. Overstreet,* 40 F.3d 1090, 1092 (10th Cir.1994). *But see United States v. White,* 890 F.2d 1033, 1034 (8th Cir. 1989) ("We agree with the government that, since this issue was neither raised by White in the earlier proceedings nor addressed by the District Court, the issue is not properly before us.").

4. *See, e.g., People v. Baker,* 178 P.3d 1225, 1235 (Colo.App.2007); *People v. Vensor,* 116 P.3d 1240, 1243 (Colo.App.2005), *rev'd on other grounds,* 151 P.3d 1274 (Colo.2007); *People v.*

*Quintano,* 81 P.3d 1093, 1096 (Colo.App.2003), *aff'd,* 105 P.3d 585 (Colo.2005); *People v. Madden,* 87 P.3d 153, 156 (Colo.App.2003), *rev'd,* 111 P.3d 452 (Colo.2005); *People v. Brown,* 70 P.3d 489, 494 (Colo.App.2002); *People v. McNeely,* 68 P.3d 540, 545 (Colo.App.2002); *People v. Felgar,* 58 P.3d 1122, 1126 (Colo.App.2002); *People v. Salinas,* 55 P.3d 268, 269 (Colo.App.2002); *People v. Skinner,* 53 P.3d 720, 725 (Colo.App.2002); *People v. Boyd,* 30 P.3d 819, 820 (Colo.App. 2001); *People v. Shepherd,* 43 P.3d 693, 701 (Colo.App.2001); *People v. Frank,* 30 P.3d 664, 666 (Colo.App.2000).

¶ 35 Therefore, while the question is not free from doubt, we conclude that this court may, as a matter of discretion, take up an unpreserved challenge to the constitutionality of a statute, but only where doing so would clearly further judicial economy. *See* Crim. P. 52(b); *cf. Auto Equity Sales, Inc. v. Superior Court of Santa Clara County,* 57 Cal.2d 450, 456, 20 Cal.Rptr. 321, 369 P.2d 937, 940 (1962) ("[W]here there is more than one appellate court· decision, and such appellate decisions are in conflict ... the court exercising inferior jurisdiction can and must make· a choice between the conflicting decisions.").

¶ 36 Judicial economy can be examined from two perspectives. The narrower view looks only forward, from the case pending before the appellate court, in deciding whether efficiency can be achieved by that court deciding an issue because it is likely to arise in a later proceeding below. The broader view looks systemically, from the start of the case, in also considering the efficiency that could have been achieved by raising the issue earlier.

¶ 37 Beginning with the narrower approach, if, on direct appeal, a division of this court recognized but declined to address an unpreserved constitutional vagueness argument, a postconviction proceeding for ineffective assistance of trial counsel would be likely. In *Estep v. People,* 753 P.2d 1241, 1248 (Colo.1988), the supreme court recognized that if it declined to accept the appeal, which was untimely, the case would continue because the defendant's remedy for the loss of his right to appeal would be another Crim. P. 35(c) motion alleging that his counsel's negligence constituted ineffective assistance. The court concluded that requiring the defendant to pursue yet another Crim. P. 35(c) motion "would not serve the interests of substantial justice and judicial economy." *Id.* (internal quotations omitted).

¶ 38 Thus, the specter of an ineffective assistance claim favors permitting flawed appeals to proceed in the interest of judicial economy. *See, e.g., People v. Baker,* 104 P.3d 893, 898 (Colo.2005) (holding that the Court of Appeals abused its discretion by dismissing the defendant's appeal as untimely because, as relevant here, it would be in the interest of judicial economy to avoid a Crim. P. 35(c) claim for ineffective assistance of counsel); *People in Interest of M.A.M.,* 167 P.3d 169, 174 (Colo.App.2007) (discussing that, when "a juvenile in a delinquency action can establish that his or her attorney's ineffectiveness resulted in a deprivation of the right to appeal," "other factors—such as ... the interests of judicial economy, and the propriety of requiring a juvenile to file a motion pursuant to Crim. P. 35(c) to seek relief from counsel's ineffectiveness—weigh heavily in favor of permitting the late filing" (internal quotations omitted)).

¶ 39 In a postconviction proceeding raising ineffective assistance of counsel, to succeed the defendant must show that the attorney's performance was "deficient" and that he suffered prejudice as a result of this deficient performance. *Carmichael v. People,* 206 P.3d 800, 805–06 (Colo.2009). In a case involving failure to preserve a vagueness challenge, both this court on direct appeal and the postconviction court would analyze vagueness similarly. And if the statute were found constitutionally deficient, both courts would conclude that the defendant was prejudiced. These considerations suggest that judicial economy generally favors deciding on direct appeal that which would have to be resolved in a later Crim. P. 35(c) proceeding.

¶ 40 However, unlike direct appeal, which would address only vagueness ,of the challenged statute and its effect on the defendant, the postconviction court must also consider whether trial counsel's failure to raise the challenge "fell below an objective standard of reasonableness." *People v. Price,* 240 P.3d 557, 564 (Colo.App.2010). Concluding that the statute was unconstitutionally vague would not necessarily establish lack of reasonable advocacy by trial counsel in failing to have raised the issue. *See People v. Thomas,* 867 P.2d 880, 886 (Colo.1994) ("In cases where the ineffective assistance of counsel claim can purportedly be shown on the record, a proper record on appeal may still require explanations by trial counsel about alleged incompetent acts or omissions, or expert testimony as to the requisite stan-

dard of care in the applicable legal community.").

¶ 41 A facial vagueness challenge involves a heavy burden and succeeds only when the statute is "impermissibly vague in all of its applications" because it specifies "no standard of conduct." *People in Interest of M.C.*, 2012 COA 64, ¶¶ 22, 21, 292 P.3d 1030 (internal citations omitted). The party attacking the statute "has the burden of proving it unconstitutional beyond a reasonable doubt," and "if a challenged statute is capable of several constructions, one of which is constitutional, the constitutional construction must be adopted." *People v. Schoondermark*, 699 P.2d 411, 415 (Colo.1985).

¶ 42 Defendant cites no authority, nor have we found any in Colorado, suggesting that section 18–7–407 is so obviously deficient that failing to challenge its constitutionality amounts to unreasonable advocacy, as a matter of law. *Cf. Page v. United States*, 282 F.2d 807, 811 (8th Cir.1960) (holding that a statute "is certainly not so plainly unconstitutional that the failure of the trial court ... to hold it so can be regarded as a plain error or a culpable neglect of judicial duty." (internal citation omitted)).[5] Thus, efficiency is not the sole consideration because granting defendant relief on direct appeal would significantly reduce the burden that defendant must satisfy to obtain relief in a postconviction proceeding.[6] Therefore, the narrower approach does not clearly establish judicial economy.

¶ 43 *Hinojos–Mendoza* does not require a different conclusion. There, the supreme court recognized judicial economy in taking up an unpreserved confrontation issue under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The court explained that the defendant could rely on *Crawford* because it had been decided during his direct appeal. But trial counsel could hardly have been expected to raise the issue the *Crawford* court decided, contrary to

controlling Colorado precedent. *See People v. Dement*, 661 P.2d 675, 680–81 (Colo.1983) (relying on *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)), *abrogated by People v. Fry*, 92 P.3d 970 (Colo.2004) (recognizing the rejection of *Ohio v. Roberts* by *Crawford v. Washington* ).

¶ 44 Here, in contrast, defendant does not invoke any recently-announced precedent on vagueness. Because the vagueness argument could have made before trial, the particular circumstances of *Hinojos–Mendoza* do not preclude considering the diseconomies resulting from defendant's failure to raise the issue at that time. Therefore, the narrower approach does not warrant a departure from *Cagle* and its progeny.

¶ 45 The systemic approach recognizes that judicial resources are conserved "by alerting the trial court to a particular issue in order to give the court an opportunity to correct any error that could otherwise jeopardize a defendant's right to a fair trial." *People v. Pahl*, 169 P.3d 169, 183 (Colo.App. 2006). Hence, reversal for unpreserved error "must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time." *Hagos v. People*, 2012 CO 63, ¶ 23, 288 P.3d 116. Without any such limitation, a defendant might intentionally "withhold a meritorious objection, permit error to occur, and then, in the event of a conviction, raise the error for the first time on appeal." *People v. Smith*, 121 P.3d 243, 253 (Colo.App.2005) (Webb, J., specially concurring) (citing authorities).

¶ 46 A constitutional vagueness challenge to a statute could be raised by motion. *See* Crim. P. 12(b)(1) ("Any defense or objection which is capable of determination without the trial of the general issue may be raised by motion."); *see also, e.g., People v. Waddell*, 24 P.3d 3, 7 (Colo.App.2000) ("[T]he trial court granted the defense counsel's mo-

5. Cases such as *Estep*, which involved an untimely appeal, are distinguishable because failure to perfect an appeal for a defendant who desired to appeal would be per se unreasonable. *See Baker*, 104 P.3d at 896 ("Plainly, counsel neglected his duties to his client by failing to follow the proper procedures for filing a notice of appeal....").

6. While the same could be said of many issues taken up on direct appeal as plain error under Crim. P. 52(b), here the inquiry is narrowed by *Cagle* and *Lesney*.

tion to dismiss the felony charges against him, based on a finding that the statute was unconstitutional."); *People v. Hickman*, 988 P.2d 628, 634 (Colo.1999) ("[T]he trial court held the statute unconstitutional and granted the defendant's motion to dismiss.").

¶ 47 Because such a challenge does not require the defendant to develop a factual record before moving, it could also be raised early in the proceeding. *Compare People v. Veren*, 140 P.3d 131, 140 (Colo.App.2005) (declining to address unconstitutionality as applied for the first time on appeal because "it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional"), *with Allman*, ¶ 15 ("Just as the absence of a sufficient record is a common basis for refusing to review unpreserved constitutional error, courts that have exercised their discretion to review such error have relied on the presence of a sufficiently developed record as a basis for doing so.").

¶ 48 Raising vagueness of the underlying statute promptly by motion would save significant judicial resources otherwise consumed by pretrial proceedings, trial, and appeal.[7] Therefore, the broader approach favors declining to address defendant's unpreserved vagueness challenge, which encourages defense counsel to "seek a fair and accurate trial the first time." *Hagos*, ¶ 23.

¶ 49 Accordingly, because judicial economy does not clearly afford a basis for departing from *Cagle, Lesney*, and numerous decisions from divisions of this court, we decline to consider defendant's vagueness challenge.

## IV. Confrontation Evidence

¶ 50 Defendant next contends the trial court violated his confrontation rights by precluding cross-examination of A.J. on the details of her plea agreement, her continued prostitution, and the outstanding warrant. We conclude that constitutional error occurred, but it was harmless beyond a reasonable doubt.

¶ 51 Before trial, the prosecution moved in limine to preclude evidence of A.J.'s sexual history, her initial arrest, the terms of her plea agreement, and her continued prostitution despite her promise to reform when obtaining deferred adjudication. Defense counsel argued that this information was admissible to impeach A.J. by showing bias.

¶ 52 At the hearing, the prosecution told the court of an outstanding arrest warrant for A.J. because she had violated the terms of her probation. In response, defense counsel requested that A.J. be arrested when she testified at trial. However, he did not ask the court to rule on the admissibility of the warrant.

¶ 53 The trial court found that: A.J.'s continued prostitution did not "have any bearing on any issues before this [c]ourt"; section 16–9–204, C.R.S.2012, gave A.J. immunity from arrest as an out-of-state witness; and the details of A.J.'s arrest and her plea deal were irrelevant.

¶ 54 On cross-examination, A.J. said that she was "unemployed." During redirect, she said that no one had suggested she would receive any benefit from testifying. Defense counsel then sought leave to cross-examine her about the specifics of the original charges and plea, as well as her continued prostitution.

¶ 55 The trial court ruled that counsel could explore on recross-examination "the fact that [A.J.] faced charges in Denver, that the matter was resolved, and does she have any obligation as part of that matter to come to court." After hearing in camera testimony from A.J., the court refined its ruling, allowing inquiry into whether a disposition had been reached that required her to testify against defendant. However, the court would not permit counsel "to go into what she was charged [with] and what was dismissed and the idea of the deferred adjudication." Following this ruling, A.J. testified before the jury that she had been arrested and charged in Denver the day after her encounter with defendant and had reached a

---

7. Both *Greer* and *Tillery* are distinguishable because the unpreserved double jeopardy issues affected only sentencing.

plea agreement with the authorities. She equivocated on whether testifying against defendant was required by the agreement.

¶ 56 For the reasons stated below, we conclude that the court committed constitutional error in limiting cross-examination on the plea agreement. However, we further conclude that overwhelming evidence of defendant's guilt rendered this error harmless beyond a reasonable doubt. Having so concluded, we need not address the other two alleged confrontation violations.

### A. Standard of Review

¶ 57 "[A] trial court has substantial discretion in deciding questions concerning the admissibility of evidence. Therefore, absent an abuse of discretion the evidentiary rulings of a trial court will be affirmed." *People v. Quintana,* 882 P.2d 1366, 1371 (Colo.1994). However, this discretion does not permit limitations on cross-examination that unduly restrict a defendant's right to question a witness about bias or motive. *Merritt v. People,* 842 P.2d 162, 166–67 (Colo. 1992). Review of a discretionary ruling asks if the court's decision was "manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *People v. Orozco,* 210 P.3d 472, 475 (Colo.App.2009). In contrast, possible confrontation right violations are reviewed de novo. *Bernal v. People,* 44 P.3d 184, 198 (Colo.2002).

### B. A.J.'s Original Charges and Plea Bargain

#### 1. Trial Court Limitations Constitute Error

¶ 58 The right to confront and cross-examine witnesses is guaranteed by the federal and Colorado Constitutions. *Kinney v. People,* 187 P.3d 548, 558–59 (Colo.2008). Thus, while courts have wide latitude to reasonably limit cross-examination, *id.* at 559, they must "allow broad cross-examination of a prosecution witness with respect to the witness'[s] motive for testifying, especially . . . where [her] testimony against the defendant might be influenced by a promise of, or hope or expectation of, immunity or lenien-

cy." *People v. King,* 179 Colo. 94, 98, 498 P.2d 1142, 1144–45 (1972).

¶ 59 A confrontation violation occurs if the defendant "was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness," which leaves the jury with a "significantly different impression of the witness's credibility." *Kinney,* 187 P.3d at 559 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)) (internal quotations omitted).

¶ 60 As relevant here, when a witness faced criminal charges and entered into a plea agreement, the defendant must be allowed to provide the jury "with adequate facts from which it can appropriately draw inferences relating to bias and motive." *People v. Montoya,* 942 P.2d 1287, 1293 (Colo. App.1996). For example, the Confrontation Clause is satisfied when the jury has been provided with adequate facts to be "fully informed as to the original charge brought against a prosecution witness as well as the charge to which the witness later pleaded guilty in exchange for his or her testimony, and the jury also hears about the penalty actually received." *Id.; accord People v. McKinney,* 80 P.3d 823, 829 (Colo.App.2003) ("A defendant's right to confrontation is not violated . . . as long as the jury was informed of the original charges, the charges to which the witness pleaded guilty, and the penalty imposed."), *rev'd on other grounds,* 99 P.3d 1038 (Colo.2004); *cf. People v. Collins,* 730 P.2d 293, 300 (Colo.1986) ("[When] the jury was fully informed that [the witness] had been charged with first degree assault and accessory to a violent crime, and, in exchange for his testimony, was allowed to plead guilty to the accessory charge, receiving two years probation and a deferred sentence[, t]he jury had the facts from which it could appropriately draw inferences relating to [the witness's] reliability. The defendant was not denied the right to effective cross-examination.").

¶ 61 Here, contrary to these cases, the jury heard only that A.J. had been arrested, agreed to plead guilty, and provided

information to police. As the prosecutor acknowledged in argument before the trial court, the disparity between the originally-charged class three felony (drug possession) and the class three misdemeanor (prostitution) to which A.J. pled was likely to cause an average juror to infer that she had received significant benefit from testifying. Yet, the trial court's limitations left the jury to believe that A.J. had merely pled guilty to the original charges, as the jury never was informed of the original charges she faced. Hence, defense counsel's attempt to show bias in the restricted recross-examination may have appeared as "a speculative and baseless line of attack" on A.J.'s credibility. *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

¶ 62 A.J.'s equivocation about whether her plea agreement was conditioned on providing testimony against defendant underscores the need to expose the jury to "facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *People v. Pate*, 625 P.2d 369, 370 (Colo.1981) (quoting *Davis*, 415 U.S. at 318, 94 S.Ct. 1105). The wide disparity between the charges, as well as the leniency of deferred adjudication, plausibly suggest that A.J.'s testimony "might [have] be[en] influenced by a promise of, or hope or expectation of, immunity or leniency." *King*, 179 Colo. at 98, 498 P.2d at 1144–45.

¶ 63 Therefore, by precluding cross-examination on the plea details, the trial court denied defendant his constitutional right to confrontation.

### 2. The Error was Harmless Beyond a Reasonable Doubt

¶ 64 Both the United States and Colorado Supreme Courts have held that constitutional errors occurring during trial do not require reversal, if the error was harmless beyond a reasonable doubt. *See Van Arsdall*, 475 U.S. at 681, 106 S.Ct. 1431; *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998). This principle applies to confrontation violations. *Merritt*, 842 P.2d at 168–69.

¶ 65 Even assuming maximum damage to the witness's credibility, appellate courts should not reverse if the overall strength of the prosecution's case, the absence of contradictory evidence, and the extent of the cross-examination permitted show that the error was harmless beyond a reasonable doubt. *Id.* at 169. The prosecution bears the burden of proof in this inquiry. *People v. Harris*, 43 P.3d 221, 230 (Colo. 2002).

¶ 66 Here, A.J.'s testimony was a key element of the prosecution's case, but was not the only evidence of defendant's guilt. The emails recovered from defendant's computer admit that he:

- Contacted A.J. about "references" from other clients and wanted to "schedule for tomorrow";
- Paid A.J. $240, which included a bonus for having come to his home on the night of the charged offense; and
- Used common Internet abbreviations to describe his sexual contact with A.J.

¶ 67 Defense counsel attempted to explain these admissions by arguing that, while A.J. came into defendant's home and he gave her money, he did not engage in sexual acts with her because she refused to provide identification verifying her age. Defense counsel also argued that the email favorably reviewing A.J.'s performance had been fabricated by defendant to help A.J. with her business.

¶ 68 However, because defendant did not testify, no evidence supports either argument. Appellate courts may only consider assertions that are supported by record evidence, *McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo.App.2004), and mere arguments of counsel must be disregarded. *Lucero v. People*, 166 Colo. 233, 237, 442 P.2d 820, 822 (1968). Thus, defendant's highly inculpatory email admissions stand uncontroverted. *See People v. Smith*, 77 P.3d 751, 760 (Colo.App. 2003) (concluding a constitutional error was harmless beyond a reasonable doubt based on overwhelming evidence when defendant was charged with felony escape and testified that he voluntarily left the state, thereby violating the terms of his supervision and the felony escape statute).

¶ 69 Further, even if a reasonable doubt exists whether defendant engaged in sexual contact with A.J., as counsel unsuccessfully attempted to show by cross-examining her,[8] a person need not perform a sexual act to be guilty of patronizing a prostituted child. The defendant must, as relevant here, "[e]ngage[ ] in an act which is prostitution ... by a child," § 18–7–406(1)(a), which is defined as "a child *performing or offering or agreeing to perform*" various sexual acts "with any person not the child's spouse in exchange for money or other thing of value." § 18–7–401(6), C.R.S.2012 (emphasis added). Thus, the record overwhelmingly supports the prosecution's case and lacks support for defendant's assertions.

¶ 70 While we conclude that the trial court impermissibly limited defendant's cross-examination of A.J., the court did not entirely prevent cross-examination about bias or motive. Defense counsel questioned A.J. about inconsistencies in her testimony and suggested that she had changed her testimony during trial based on prosecution evidence. *See Vega v. People,* 893 P.2d 107, 120 (Colo.1995) (finding a Confrontation Clause violation harmless beyond a reasonable doubt when the defendant was able "to elicit such information bearing on the credibility of the [witnesses'] testimony through alternative avenues of cross-examination," even though these alternative avenues "may not have demonstrated [the witnesses'] interest in the outcome of the case as strongly as the excluded testimony").

¶ 71 Therefore, even assuming that the excluded evidence would have caused maximum damage to A.J.'s credibility, the trial court's error was harmless beyond a reasonable doubt.

## C. Other Confrontation Clause Violations

¶ 72 Defendant also asserts that the trial court violated his constitutional rights by excluding evidence of the outstanding warrant against A.J. and of her continued prostitution. However, admission of this evidence would have benefitted defendant in the same way as evidence of the details of the plea agreement—to damage A.J.'s credibility. Therefore, even assuming that these limits on cross-examination were preserved constitutional errors, they were harmless beyond a reasonable doubt for the reasons described above. Hence, we need not address these issues. *Cf. People v. Pena–Rodriguez,* 2012 COA 193, ¶ 69, —— P.3d —— (declining to address the merits of an issue when any error would be harmless).

## V. Jury Instructions

### A. Definitional Instruction

¶ 73 Defendant argues that the trial court's instruction defining "prostitution by a child" was erroneous in three ways. First, the statute on which the instruction was based violates due process and equal protection. Second, the trial court's definition did not conform to *People v. Madden,* 111 P.3d 452 (Colo.2005). Third, the trial court confused the jury by providing the entire statutory definition of "prostitution by a child." None of these arguments was preserved below.

¶ 74 We decline to address defendant's unpreserved constitutional arguments for the same reasons given in Part III, *supra.* Because providing the statutory definition of "prostitution by a child" was appropriate and *Madden* does not require a different result, we discern no error in the trial court's instruction.

#### 1. Standard of Review

¶ 75 When a defendant does not make a specific objection to tendered jury instructions, review is for plain error. *People v. Garcia,* 28 P.3d 340, 345 (Colo.2001). Plain error occurs only where an error is so "obvious and substantial" that it "undermined the fundamental fairness of the trial itself" and "cast serious doubt on the reliability of the judgment of conviction." *People v.*

---

**8.** A.J. testified that, after having engaged in sexual acts but before she left defendant's home, he asked to see some identification that would confirm her age, as he had seen posts on Craigslist suggesting that she was underage. A.J. declined to do so. On cross-examination, defense counsel challenged this sequence of events. A.J. repeated that her age came up only after she and defendant engaged in sexual acts.

*Miller*, 113 P.3d 743, 750 (Colo.2005) (internal quotations omitted).

### 2. Discussion

¶76 Definitional instructions are generally proper when they follow the· language of the applicable statute. *See, e.g., Riley v. People*, 266 P.3d 1089, 1094 (Colo. 2011); *Idrogo v. People*, 818 P.2d 752, 754 (Colo.1991); *People v. R.V.*, 635 P.2d 892, 894 (Colo.1981); *People v. Crawford*, 191 Colo. 504, 507, 553 P.2d 827, 829 (1976); *Blincoe v. People*, 178 Colo. 34, 38, 494 P.2d 1285, 1287 (1972). While courts must tailor instructions to the facts at trial, instructions are erroneous only if, taken as a whole, they do not instruct the jury on the applicable law. *Compare Idrogo*, 818 P.2d at 754–56 (holding that, when both parties agree that the facts of the case entitled defendant to a self-defense instruction, failing to so instruct the jury was error), *and Leonard v. People*, 149 Colo. 360, 374–75, 369 P.2d 54, 62 (1962) (holding that additional instructions were necessary when the statutory definition of the charged offense, by itself, suggested that the defendant bore the burden of proof), *with Crawford*, 191 Colo. at 507–08, 553 P.2d at 829–30 (finding no error in jury instructions because, "[w]hen all of the instructions as given ... are read and considered together as a whole, they clearly set forth the elements of the respective offenses charged").

¶77 When a statute defines an offense using multiple theories of liability, so instructing the jury is not error, even if the evidence is insufficient to support the conviction under every theory provided in the statute. *See People v. Dunaway*, 88 P.3d 619, 631 (Colo.2004) (affirming a trial court instruction when it used statutory language defining "child abuse resulting in serious bodily injury" as, in pertinent part, either "caus[ing] an injury to a child, or permit[ing] a child to be unreasonably placed in a situation which posed a threat of injury to a child's life or health," even though the evidence only supported one of these methods of liability), *overruling James v. People*, 727 P.2d 850, 852 (Colo.1986); *People v. Viduya*, 703 P.2d 1281, 1292 (Colo.1985) ("[When t]he statute describes two ways in which this offense can be committed ... [i]t is then proper to instruct the jury in the disjunctive, requiring conviction if any of the statutory alternatives is established by the evidence.").

¶78 Here, while defendant concedes that the definitional instruction substantially followed the statutory language, he asserts for the first time on appeal that error occurred because the instruction provided multiple ways by which an act could constitute "prostitution by a child," thereby "fail[ing] to specify what action, if any, was required." However, the instruction merely recites the multiple, statutorily-defined means of committing the underlying offense, one of which is "a child ... offering or agreeing to perform ... any [sexual] act ... in exchange for money." And defendant's emails were sufficient to support a jury finding to this effect. *See People v. Jones*, 140 P.3d 325, 329 (Colo. App.2006) ("In assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt.").

¶79 *People v. Madden* does not require a different result. In *Madden*, the supreme court held that convicting a defendant of "patronizing a prostituted child" requires some record evidence that the defendant "*attempted* to give anything of value ... in exchange for sex." 111 P.3d at 460 (emphasis added). Here, A.J. testified that defendant paid her $240. Thus, construed in the light most favorable to the prosecution, *Jones*, 140 P.3d at 329, the evidence is sufficient to support a finding that defendant "attempted to give anything of value ... in exchange for sex."

¶80 Therefore, the trial court's definitional instruction did not constitute plain error.

### B. Lesser–Included Offense Instruction

¶81 Defendant also challenges the trial court's failure to give his tendered jury instruction on the lesser-included offense of attempt. However, given the definition of "prostitution by a child," the evidence would

not have permitted the jury to acquit defendant of patronizing a prostituted child, while convicting him of the lesser-included attempt offense. Therefore, we discern no error.

### 1. Standard of Review

■ ¶ 82 A trial court's decision whether to instruct the jury on a lesser-included offense is reviewed for an abuse of discretion. *People v. Rubio*, 222 P.3d 355, 360 (Colo.App. 2009) (citing *People v. Jimenez*, 217 P.3d 841, 870 (Colo.App.2008)). "To constitute an abuse of discretion, the opponent must show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair." *People v. Webster*, 987 P.2d 836, 840 (Colo.App. 1998).

### 2. Discussion

■ ¶ 83 "A defendant is entitled to an instruction on a lesser-included offense if there is evidence to support giving that instruction. Such an instruction is appropriate when there is a rational basis to acquit of the offense charged but convict on the included offense. However, the mere chance that a jury may reject uncontroverted testimony and convict on the lesser charge does not require the trial court to instruct the jury on the lesser charge." *People v. Ramirez*, 18 P.3d 822, 827 (Colo.App.2000) (internal citations omitted).

■ ¶ 84 The offense of patronizing a prostituted child requires, as relevant here, "knowingly engaging in an act" where "a child perform[s] or offer[s] or agree[s] to perform ... any [sexual] act ... in exchange for money." § 18–7–406(1)(a), 18–7–401(6). Based on the language of the statute, actual performance of a sexual act is not necessary; a mere offer or agreement to perform is sufficient, provided money has been promised. *See supra* Part V.A; *Madden*, 111 P.3d at 460 (holding that "patronizing a prostituted child" requires some record evidence that the defendant "attempted to give anything of value ... in exchange for sex").

■ ¶ 85 Here, because the uncontroverted evidence that sixteen-year-old A.J. agreed to perform sexual acts in exchange for money promised her by defendant established the required elements of the crime, giving a lesser-included instruction would have been improper. *See People v. Price*, 969 P.2d 766, 768 (Colo.App.1998) (holding that, when the prosecution presented evidence that the defendant stole at least $44,000, defendant failed to present any evidence that the amount she stole was less than $15,000, the minimum threshold required by the charged crime, "the jury was not provided with any rational basis to acquit her of the offense charged, but convict her of one of the lesser included offenses"); *Graham v. People*, 199 Colo. 439, 441, 610 P.2d 494, 495 (1980) ("[T]he defendant's own testimony constituted an admission of guilt of the offense of simple robbery. Because the uncontroverted evidence before the jury established, at a minimum, that the defendant had committed that offense, he was not entitled to an instruction on the [lesser-included] crime of theft."); *People v. Lucas*, 992 P.2d 619, 626 (Colo.App.1999) ("Because the evidence establishing defendant's guilt as to the robbery charge was uncontroverted, there was no rational basis for the jury to acquit defendant of the robbery charge and still convict him of assault. Therefore, defendant was not entitled to an instruction on the lesser non-included offense of assault.").

■ ¶ 86 Further, the jury could not logically acquit defendant of an act considered "patronizing a prostituted child" under the statute's broad definition, which includes offering to engage in sexual activities for money, while convicting him of attempting to perform these same acts. "[T]here can be no crime of an attempt to commit an attempt." *Allen v. People*, 175 Colo. 113, 117, 485 P.2d 886, 888 (1971) (quoting *State v. Davis*, 108 N.H. 158, 162, 229 A.2d 842, 845 (1967)).

¶ 87 Therefore, the trial court properly rejected defendant's attempt instruction.

### VI. Correction of the Mittimus

¶ 88 Finally, both parties concede, and we agree, that the mittimus incorrectly states

that defendant was convicted of a class three felony. Because the court lowered the felony level of the offense before trial in response to prosecutorial misconduct, defendant actually was convicted of a class four felony. Thus, we remand to the trial court to correct the mittimus and include a brief explanatory note to prevent further confusion.

## VII. Conclusion

¶ 89 The judgment is affirmed and the case is remanded for correction of the mittimus.

Judge LICHTENSTEIN and Judge FOX concur.