COLORADO COURT OF APPEALS                                    2016COA90

---

Court of Appeals No. 14CA0862
Gilpin County District Court No. 13CR20
Honorable Philip J. McNulty, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Scott Allen Helms,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE J. JONES
Lichtenstein and Dunn, JJ., concur

Announced June 16, 2016

---

Cynthia H. Coffman, Attorney General, Molly E. McNab, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Gregory Lansky, Alternate Defense Counsel, Aurora, Colorado, for Defendant-
Appellant

¶ 1    Defendant, Scott Allen Helms, appeals the district court's judgment of conviction entered on jury verdicts finding him guilty of two counts of Internet sexual exploitation of a child.  He also appeals the revocation of his probation.  We reverse defendant's conviction on one of the two counts, reverse the revocation of defendant's probation, and otherwise affirm.  As matters of first impression, we hold that the statute criminalizing Internet child exploitation, section 18-3-405.4(1)(a), C.R.S. 2015, does not violate the dormant Commerce Clause, is not unconstitutionally overbroad, and does not violate a defendant's right to due process.

## I.  Background

¶ 2    On February 1, 2013, defendant, then age forty-seven, started a conversation in an Internet chat room with "Miranda."  "Miranda" was actually Sergeant Troy Hendricks pretending to be a fourteen-year-old girl.[1]  After "Miranda" moved the conversation to a private chat, defendant asked her to take off her clothes and rub her nipples.  Defendant then asked "Miranda" if she had a younger sister with her.  "Miranda" responded that there were two other girls

---

[1] Sergeant Hendricks was in Gilpin County, Colorado, during his Internet and telephone communications with defendant.

who lived in her building, ages thirteen and twelve. Defendant asked her to go get the other girls.

¶ 3     "Miranda" told defendant that "Lizzy" (also Sergeant Hendricks) had come over and that she was twelve years old. Defendant made the "girls" promise that they would not tell their parents about their interaction with him. He then asked the "girls" to take off each other's clothes, to perform oral sex, and for "Miranda" to insert an item into "Lizzy's" vagina. Defendant asked the "girls" to take photos of each other naked performing the requested acts.

¶ 4     During this chat, defendant asked "Miranda" to video chat. Sergeant Hendricks placed a piece of paper over his camera so that defendant could not see him, and defendant assumed that "Miranda's" video camera did not work. Sergeant Hendricks was able to capture a photo of defendant while defendant was trying to video chat with the "girls."

¶ 5     A few days later, on February 5, defendant started a second chat conversation with "Miranda." He asked "Miranda" to send him the pictures that she had taken of herself and "Lizzy" during their first chat conversation on February 1. Defendant told "Miranda"

that he loved her, wanted to "do [her]," and would buy her a plane ticket to come visit him in Maine. He asked her if she was on birth control. When she said yes, he told her to throw away the pills because he wanted to impregnate her. Sergeant Hendricks gave defendant "Miranda's" cell phone number, saying that defendant could text "Miranda." Defendant sent "Miranda" a text message.

¶ 6 Sergeant Hendricks called defendant the next day using the number from which "Miranda" had received a text message. The call went to defendant's voicemail. Defendant called Sergeant Hendricks back later that day. When Sergeant Hendricks told defendant that he had records of his conversations with "Miranda," including a picture of defendant, defendant admitted that he had communicated with "Miranda" and had asked her to perform sexual acts. Defendant said that he "[had] a problem" and was going to counseling.

¶ 7 Sergeant Hendricks called defendant again the next day to talk about the incident. Defendant told Sergeant Hendricks that he was

planning to fly "Miranda" out to visit him and hide her in a hotel.[2]

Defendant said that his wife would "kick [his] ass" if she were to

find out he had flown "Miranda" out to visit him.

¶ 8     The State initially charged defendant with eight counts of

Internet sexual exploitation of a child.  *See* § 18-3-405.4(1)(a).

Ultimately, defendant faced only two counts.  Count one charged

that defendant had violated the Internet child exploitation statute

by asking "Miranda" to "expose or touch [her] or another person's

intimate parts while communicating with the defendant via a

computer network" on February 1, 2013.  Count two charged the

same type of violation occurring on February 5, 2013.  A jury

convicted defendant as charged, and the district court sentenced

him to ten years to life of supervised probation on each count, to

run concurrently.

¶ 9     The district court later revoked defendant's probation when he

failed to register as a sex offender.  The court resentenced

defendant to the custody of the Department of Corrections for an

indeterminate term of two years to life.

---

[2] At this point, defendant still believed that "Miranda" was a real fourteen-year-old girl.

II. Discussion

¶ 10    Defendant contends that we should reverse his convictions because (1) section 18-3-405.4(1)(a) is unconstitutional for various reasons; (2) the district court denied him a fair trial by admitting "other bad act" evidence and the prosecutor engaged in misconduct by referring to that evidence; (3) there is insufficient evidence to support his convictions because he did not commit any criminal acts in Colorado; (4) there is insufficient evidence to support his conviction for count two because his alleged actions forming the basis for count two — asking "Miranda" to send him the photos he thought she had taken on February 1 — are not criminalized by the Internet child exploitation statute; and (5) the district court should have declared a mistrial when a witness mentioned another investigation, violating the court's prior ruling that the other investigation should not be mentioned. Defendant also contends that the district court erred by revoking his probation and resentencing him without conforming to statutory requirements.

¶ 11    We agree with defendant that there is insufficient evidence to support his conviction for count two and that the district court

erred in revoking his probation.  We otherwise reject defendant's

contentions.

A.  Constitutionality of the Internet Child Exploitation Statute

¶ 12     The Internet child exploitation statute provides in relevant

part:

> (1) An actor commits internet sexual
> exploitation of a child if the actor knowingly
> importunes, invites, or entices through
> communication via a computer network or
> system, telephone network, or data network or
> by a text message or instant message, a person
> whom the actor knows or believes to be under
> fifteen years of age and at least four years
> younger than the actor, to:
>
> (a) Expose or touch the person's own or
> another person's intimate parts while
> communicating with the actor via a computer
> network or system, telephone network, or data
> network or by a text message or instant
> message . . . .

§ 18-3-405.4(1)(a).

¶ 13     Defendant contends that the Internet child exploitation statute

is facially unconstitutional because it violates the so-called dormant

Commerce Clause of the United States Constitution, violates the

First Amendment because it is overly broad, and violates his

6

constitutional right to due process because it is vague.[3] These

challenges fail.

## 1. Standard of Review

¶ 14    Defendant concedes that he did not preserve these

contentions.  We will nevertheless consider them because the

factual record is sufficient to allow us to do so.  *See People v.*

*Houser*, 2013 COA 11, ¶ 35; *People v. Allman*, 2012 COA 212, ¶ 16;

*People v. Greer*, 262 P.3d 920, 933-36 (Colo. App. 2011) (J. Jones,

J., specially concurring).  We will do so, however, applying the plain

error standard of review.  *See Hagos v. People*, 2012 CO 63, ¶ 14

(constitutional errors that were not preserved are reviewed for plain

error).  Reversal for plain error is required only if (1) there was an

error; (2) that error was obvious; and (3) that error so undermined

the fundamental fairness of the trial as to cast serious doubt on the

reliability of the judgment of conviction.  *Id.*

¶ 15    We review the constitutionality of a statute de novo.  *Hinojos-*

*Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007).  Because

statutes are presumed to be constitutional, the party challenging

---

[3] We do not read any of defendant's arguments as as-applied
challenges to the constitutionality of the statute.

the facial constitutionality of a statute has the burden of showing that the statute is unconstitutional beyond a reasonable doubt. *Id.*

## 2. Dormant Commerce Clause

¶ 16    Article I, Section 8, Clause 3 of the United States Constitution (the Commerce Clause) authorizes Congress to "regulate Commerce with foreign Nations, and among the several States." Though the Commerce Clause says nothing about the protection of interstate commerce in the absence of any action by Congress, the Supreme Court has held that it prohibits certain state actions that interfere with interstate commerce. This application of the Commerce Clause is referred to as the "dormant" Commerce Clause. *Quill Corp. v. North Dakota*, 504 U.S. 298, 309 (1992).

¶ 17    "The negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby 'imped[es] free private trade in the national marketplace.'" *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) (alteration in original) (citations omitted) (quoting in part *Reeves, Inc. v. Stake*, 447 U.S. 429, 437 (1980)). "The modern law of what has come to be called the dormant Commerce Clause is driven by concern about 'economic

8

protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Dep't of Revenue v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting in part *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).

¶ 18     Defendant argues that the Internet child exploitation statute violates the dormant Commerce Clause because it regulates communication occurring entirely outside of Colorado, the burdens it places on interstate commerce outweigh any putative local benefit, and it subjects interstate use of the Internet to inconsistent regulation.  We reject these arguments in turn.

¶ 19     Defendant is correct that a law which regulates commerce occurring entirely outside a state's boundaries violates the dormant Commerce Clause.  *See, e.g.*, *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989); *Edgar v. MITE Corp.*, 457 U.S. 624, 641-43 (1982) (plurality opinion).  But he is not correct in asserting that section 18-3-405.4(1)(a) regulates such commerce.  Though the Internet child exploitation statute does not expressly include a territorial limitation, such a limitation is implied by section 18-1-201, C.R.S. 2015.  That statute provides that a person is subject to prosecution

9

in Colorado "for an offense which he commits . . . if," as relevant here, the person's conduct "is committed either wholly or partly within [Colorado]." § 18-1-201(1)(a). Thus, section 18-3-405.4(1)(a) is limited to situations in which the criminal conduct occurs either wholly or partially in Colorado. And we note that a defendant's conduct qualifies on that score if he sends a communication to someone who is in Colorado. *Cf. People v. Chase,* 2013 COA 27, ¶¶ 11-26 (e-mail threats sent from Boston, which were opened by the victims in Baltimore, could have caused the victims (Colorado residents) to fear for their safety or others' safety in Colorado). There is no reason to suspect that Colorado law enforcement authorities would attempt to prosecute anyone under the statute for conduct occurring entirely outside of Colorado, in derogation of section 18-1-201.

¶ 20 In arguing that the statute violates the dormant Commerce Clause because it regulates communications occurring entirely outside of Colorado, defendant relies heavily on the Tenth Circuit's decision in *American Civil Liberties Union v. Johnson,* 194 F.3d 1149

(10th Cir. 1999). In *Johnson*, the court indicated, in dictum,[4] that a New Mexico statute criminalizing the dissemination of sexual material to minors likely violated the Commerce Clause because it attempted to regulate activity occurring wholly outside of New Mexico's borders. The Tenth Circuit relied on *American Libraries Association v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997), in which the court held that a law similar to New Mexico's violated the Commerce Clause. But as the California Court of Appeal has pointed out in refusing to follow *American Libraries Association*, where prosecution is by historical practice and by statute limited to conduct occurring at least partially within a state, there is no reason to suppose that prosecution for wholly extraterritorial conduct will occur, and therefore there is no Commerce Clause violation. *Hatch v. Superior Court*, 94 Cal. Rptr. 2d 453, 472-73 (Cal. Ct. App. 2000); *see also People v. Hsu*, 99 Cal. Rptr. 2d 184, 191-92 (Cal. Ct. App. 2000). Thus, defendant's extraterritorial effect argument fails.

---

[4] *See Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1160 (10th Cir. 1999) ("[a]lthough we need not reach [the Commerce Clause] issue").

¶ 21    Defendant's argument that the Internet child exploitation statute places an undue burden on interstate commerce also fails.[5] Again, defendant relies primarily on *American Libraries Association.* But the court in *American Libraries Association* pointed out that the plaintiffs in that case had not challenged the portion of the statute prohibiting "adults from luring children into sexual contact by communicating with them via the Internet." 969 F. Supp. at 179.

¶ 22    In *People v. Foley*, 731 N.E.2d 123 (N.Y. 2000), the court rejected a dormant Commerce Clause challenge to just such a luring statute, one which, similar to the statute at issue in this case, prohibits a person from using Internet communication to "importune[], invite[], or induce[] a minor to . . . engage in a sexual

---

[5] It does not appear that defendant argues that the Internet child exploitation statute discriminates against interstate commerce. But, to the extent he intends to assert that the statute discriminates against interstate commerce, we reject any such notion. Discrimination in this context "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994); *see, e.g., Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992) (Alabama statute that imposed a higher fee for disposal of hazardous waste from other states than it imposed for disposal of waste from Alabama was facially discriminatory). The Internet child exploitation statute treats intrastate and interstate communications the same.

12

performance, obscene sexual performance, or sexual conduct" for the benefit of the person. *Id.* at 127 (emphasis omitted) (quoting N.Y. Penal Law § 235.22 (McKinney 2016)). The court reasoned that in contrast to the statute at issue in *American Libraries Association*, the statute before it does not discriminate against or burden "any legitimate commerce." *Id.* at 133. Rather, "it regulates the conduct of individuals who intend to use the Internet to endanger the welfare of children." *Id.* at 132; *see also id.* at 133 (activity regulated by the statute "deserves no 'economic' protection").

¶ 23    In *People v. Boles*, 280 P.3d 55 (Colo. App. 2011), a division of this court applied the *Foley* court's reasoning in rejecting a defendant's contention, premised on *Johnson*, that section 18-3-306, C.R.S. 2015 (the Internet child luring statute), violates the dormant Commerce Clause. The division held that the Internet child luring statute does not discriminate against or unduly burden interstate commerce because it only regulates the conduct of persons who, through sexually explicit communications sent over the Internet, seek to endanger the welfare of children. The "luring" requirement of the offense distinguishes it from the statute

13

addressed in *Johnson.* *Boles*, 280 P.3d at 63; *see* § 18-3-306(1) (the actor must *persuade* or *invite* the minor to meet the actor for any purpose in connection with a communication describing explicit sexual conduct). Echoing the *Foley* court, the *Boles* division said that it could not "ascertain any legitimate commerce that would be derived from these communications." 280 P.3d at 63.

¶ 24    We agree with the reasoning of *Foley* and *Boles* and conclude that it applies with equal force to the Internet child exploitation statute. The statute requires that an actor "*importune[], invite[], or entice[]*" a child to expose or touch his or her or another's intimate parts while communicating with the actor. § 18-3-405.4(1) (emphasis added). It — like the statutes at issue in *Foley* and *Boles*, and unlike the statutes challenged in *Johnson* and *American Libraries Association* — contains an active element which obviates any concern about regulation of legitimate interstate commerce. *See also Hatch,* 94 Cal. Rptr. 2d at 471-72 (distinguishing *American Libraries Association* on the grounds the California statute requires proof of intent to seduce).

¶ 25    We also conclude, largely for the reasons articulated above, that the benefit of protecting children from sexual exploitation via

14

the Internet is an important state interest that outweighs any de minimis, incidental burden that enforcing the statute could have on interstate commerce. *See Hsu*, 99 Cal. Rptr. 2d at 190-91 (states have a compelling interest in protecting minors from sexual harm, and it is difficult to conceive of any legitimate commerce that would be burdened by penalizing the transmission of harmful sexual material to minors in order to seduce them); *Boles*, 280 P.3d at 62-63; *Foley*, 731 N.E.2d at 133 ("[i]ndeed, the conduct sought to be sanctioned by [the Internet statute protecting minors] is of the sort that deserves no 'economic' protection"); *see also Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (if a statute nondiscriminatorily regulates to serve a legitimate local interest, it does not violate the Commerce Clause unless the burden on interstate commerce is "clearly excessive in relation to the putative local benefits").

¶ 26  Lastly, we are not persuaded by defendant's argument that the nature of the Internet dictates that regulation of activity conducted thereby be undertaken only at the national level. The Supreme Court has never held that a state may not regulate activity that may also be carried on in the other states or that is carried on between

15

itself and other states.  And we are persuaded by the court's reasoning in *Hatch* that "[w]hile it may be true that Internet communications routinely pass along interstate lines," that fact cannot "be employed . . . to insulate pedophiles from prosecution simply *by reason of* their usage of modern technology."  94 Cal. Rptr. 2d at 471.  Further, as noted, the activity proscribed by the statute is not legitimate commerce entitled to the protection of the Commerce Clause.

¶ 27    In sum, we conclude that section 18-3-405.4(1)(a) does not violate the dormant Commerce Clause

### 3.  First Amendment/Overbreadth

¶ 28    We also reject defendant's contention that the Internet child exploitation statute violates the First Amendment because it burdens a substantial amount of protected speech and is therefore overbroad.[6]

---

[6] Defendant argues in a separate section of his opening brief that the Internet child exploitation statute violates the First Amendment because it is not narrowly tailored to achieve a compelling state interest.  But that argument is substantively the same as his overbreadth argument — that the statute burdens a "substantial amount of protected speech."  Thus, we do not address that

16

¶ 29    Generally, a facial challenge to a statute can succeed only if the challenger can show that the law is unconstitutional in all of its applications. *Dallman v. Ritter*, 225 P.3d 610, 625 (Colo. 2010). However, a showing that a statute is overbroad may be sufficient to support a facial challenge asserting that a statute is unconstitutional under the First Amendment. *Id.* A statute is unconstitutionally overbroad only if it punishes a substantial amount of constitutionally protected speech. *Boles*, 280 P.3d at 59. If a statute meets this description, we must invalidate it unless we can supply a limiting construction or partial invalidation that narrows the statute's scope to constitutionally acceptable applications. *People v. Hickman*, 988 P.2d 628, 635 (Colo. 1999). "The criterion of 'substantial overbreadth' precludes a court from invalidating a statute on its face simply because of the possibility, however slight, that it might be applied in some unconstitutional manner . . . ." *People v. Baer*, 973 P.2d 1225, 1231 (Colo. 1999).

¶ 30    The substantial overbreadth doctrine applies to constitutional challenges to statutes that prohibit "pure speech" as well as

---

argument separately. *See People v. Graves*, 2016 CO 15, ¶ 23 (the prohibition against overbreadth derives from the First Amendment).

17

"conduct plus speech." *Hickman*, 988 P.2d at 635. If a statute may apply to protected speech, but is not substantially overbroad, then whatever overbreadth exists should be resolved on a case-by-case basis. *Id.*

¶ 31 "Sexual expression which is indecent but not obscene is protected by the First Amendment . . . ." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). But a state may "regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." *Id.*

¶ 32 Colorado unquestionably has a compelling interest in protecting children from persons who would seek to involve them in harmful activity. Courts have held that statutes similar to the Internet child exploitation statute further that compelling interest. *E.g., Hsu*, 99 Cal. Rptr. 2d at 194; *see also Boles*, 280 P.3d at 59 (the defendant conceded such an interest with respect to the Internet child luring statute). And defendant concedes that the Internet child exploitation statute serves a compelling interest. So the only question remaining is whether the statute is sufficiently narrowly tailored. It is.

¶ 33    We will assume, without deciding, that the Internet child exploitation statute applies to some protected speech. *See Boles*, 280 P.3d at 60 (holding that the Internet child luring statute applies, on its face, to some protected speech because it is not content neutral and arguably applies to conduct that is not obscene).[7] But defendant fails to show that it punishes a substantial amount of constitutionally protected speech. It prohibits only a very specific type of communication — enticing a child to expose or touch his or her or another's intimate parts while communicating with the actor via a computer, telephone, or data network. Like the Internet child luring statute at issue in *Boles*, the Internet child exploitation statute applies to speech attempting to influence a child to do something harmful. We are not persuaded

---

[7] However, we note that the Internet child exploitation statute's prohibition is narrower than that of the statute at issue in *Boles*, and it may prohibit only conduct which is obscene. *Compare* § 18-3-405.4(1)(a), C.R.S. 2015 (prohibiting enticing of a child to touch his or her own, or another's, intimate parts via a proscribed network), *with* § 18-3-306(1), C.R.S. 2015 (prohibiting communicating with a child via a proscribed network, describing explicit sexual conduct, *and*, in connection with that description, *inviting the child to meet for any purpose*); *see Miller v. California*, 413 U.S. 15, 25 (1973) (states may regulate "[p]atently offensive representations or descriptions of ultimate sexual acts" because such communications are obscene).

19

by defendant's argument that the statute is overbroad because it fails to limit culpability for such communications to those made for some additional prurient purpose.

¶ 34     Defendant attempts to provide "everyday" examples of innocent hypothetical communications which, he says, the Internet child exploitation statute could be viewed as criminalizing, such as a parent discussing birth control with his child via text message, a parent asking his child to change clothes, or an adult asking a babysitter to change a child's diaper.  But we are not convinced that such communications fall within a common sense understanding of the scope of the statute.  Moreover, the statute is limited to enticements to convince a child to engage in certain activity "while communicating with the actor."  The examples proffered by defendant would not satisfy that element, and we are unconvinced that a substantial amount of protected speech would.  *See New York v. Ferber*, 458 U.S. 747, 773 (1982) (a child pornography statute was not overbroad because the legitimate reach of the statute "dwarfs its arguably impermissible applications").

¶ 35    Further, in the unlikely event any non-exploitative communication is prosecuted under the statute, that could be handled on a case-by-case basis. *See Hickman*, 988 P.2d at 635.

¶ 36    Thus, we conclude that the Internet child exploitation statute is not overbroad and therefore does not violate the First Amendment.

### 4.  Due Process/Vagueness

¶ 37    We also reject defendant's contention that the Internet child exploitation statute is vague and thus violates his right to due process of law.

¶ 38    Procedural due process requires that laws give fair notice of the conduct prohibited and supply adequate standards to prevent arbitrary and discriminatory enforcement. *People v. Graves*, 2016 CO 15, ¶ 17; *Boles*, 280 P.3d at 61.  A law is void for vagueness if its prohibitions are not clearly defined and it may reasonably be susceptible of more than one interpretation by a person of common intelligence. *Graves*, ¶ 17.  A law is not unconstitutionally vague, however, merely because it could have been drafted with greater precision; rather, it is unconstitutionally vague only if no understandable standard of conduct is specified at all. *Id.* at ¶ 18.

When assessing a vagueness challenge, we have a duty to construe the statute in such a way that satisfies constitutional due process requirements if a reasonable and practical construction of the statute will achieve such a result.  *Id.* at ¶ 20.

¶ 39     Defendant conclusorily contends that the Internet child exploitation statute is vague because it fails to contain a requirement of sexual gratification, or exceptions and defenses found in other similar statutes, which, he says, encourages arbitrary enforcement and gives law enforcement officials too much discretion.[8]

¶ 40     The Internet child exploitation statute has three distinct elements: (1) knowingly importuning, inviting, or enticing through communication via a computer network or system, telephone network, or data network or by text message or instant message; (2) a person whom the actor knows or believes to be under fifteen years old and at least four years younger than the actor; (3) to expose or touch the person's own or another's intimate parts while

---

[8] We need not address defendant's lack of fair notice contention relating to count two because of our disposition regarding the sufficiency of the evidence supporting that count.

communicating with the actor via one of the identified systems or networks. These elements are clear, and defendant offers no specific argument or example explaining how the statute could be susceptible of more than one interpretation. We therefore conclude that the Internet child exploitation statute provides fair notice of what conduct is prohibited; a person of ordinary intelligence would understand its reach. *See Hsu*, 99 Cal. Rptr. 2d at 196-98; *Boles*, 280 P.3d at 62; *Foley*, 731 N.E.2d at 131 (a person of ordinary intelligence would reasonably know what the words "importune," "invite," and "induce" mean and would know what conduct the Internet luring statute is meant to prevent).

## B. "Other Bad Act" Evidence

¶ 41 Defendant contends that the district court erred by admitting CRE 404(b) bad act evidence, specifically evidence of his intent to fly "Miranda" to Maine to visit him and to have sex with her. He also contends that the prosecutor engaged in misconduct by referring to this evidence. We conclude that the contested evidence was admissible and, thus, no error in its admission or prosecutorial misconduct occurred.

### 1.  Background

¶ 42     At trial, the prosecutor introduced defendant's recorded second phone conversation with Sergeant Hendricks, during which defendant said that he was going to buy "Miranda" a plane ticket to visit him in Maine and that he would hide her from his wife in a hotel.  The prosecutor referred to defendant's statement during his opening and closing arguments, saying that defendant was going to buy "Miranda" a ticket to Maine, hide her in a hotel room, and have sex with her.

¶ 43     At trial, defense counsel argued that defendant did not actually believe that "Miranda" was fourteen years old but was an adult who was role-playing, and that all of their communications were part of the fantasy role-playing.

### 2.  Standard of Review and Applicable Law

¶ 44     Defendant's counsel did not object to the admission of the second phone call or the prosecutor's argument referencing defendant's plan for "Miranda" at trial.  Thus, defendant's

contentions are unpreserved and we review them for plain error. *People v. Wentling*, 2015 COA 172, ¶ 26.[9]

¶ 45 We review a district court's evidentiary rulings for an abuse of discretion. *Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009); *People v. Munoz-Casteneda*, 2012 COA 109, ¶ 7. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law. *See People v. Chavez*, 190 P.3d 760, 765 (Colo. App. 2007); *see also People v. Muniz*, 190 P.3d 774, 781 (Colo. App. 2008).

¶ 46 All relevant evidence is admissible unless otherwise prohibited by law. CRE 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 47 CRE 404(b) provides:

---

[9] Although defendant contends that he preserved his objection to the admission of the contested evidence by filing a request for notice of CRE 404(b) evidence prior to trial, because we conclude that this evidence is not CRE 404(b) evidence, any filing relating to CRE 404(b) evidence would not apply. Even if it did, we would review for plain error due to defendant's failure to object to the admission of the evidence as CRE 404(b) evidence at trial since the district court had not ruled on the issue. *See* CRE 103(a)(2).

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

### 3. Analysis

¶ 48 We are not persuaded that defendant's statement to Sergeant Hendricks in their second phone conversation constitutes CRE 404(b) evidence. It was not a part of an "other" crime or wrong and was not admitted as evidence of defendant's "bad character" as he claims. Rather, defendant's statement directly rebutted his defense that he was fantasy role-playing. *See, e.g.*, *People v. Griffin*, 224 P.3d 292, 297 (Colo. App. 2009) (the defendant's notebook entries were not CRE 404(b) evidence, but rather were admissible evidence relevant to show her state of mind and to rebut her theory of defense). Thus, defendant's statements regarding his intent to meet

26

"Miranda" were admissible as relevant evidence, and the prosecutor did not engage in misconduct by using the evidence against him.

¶ 49    We also are not persuaded that the evidence should have been excluded on the grounds that it was overly prejudicial. Evidence is not "unfairly prejudicial" merely because it damages the defendant's case. *People v. Dist. Court,* 785 P.2d 141, 147 (Colo. 1990).

### C. Sufficiency of the Evidence

¶ 50    Defendant contends that the evidence was insufficient to support his convictions. We disagree as to count one, but we agree as to count two and reverse that conviction.

### 1. Standard of Review

¶ 51    We review the record de novo to determine whether the evidence before the jury was sufficient in both quantity and quality to sustain the defendant's conviction. *Clark v. People,* 232 P.3d 1287, 1291 (Colo. 2010). To make this determination, we employ the substantial evidence test. *Id.* We consider whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the defendant's guilt beyond a reasonable doubt. *People v. Sprouse,* 983 P.2d 771, 777 (Colo. 1999). We must give the

27

prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence. *Dempsey v. People,* 117 P.3d 800, 807 (Colo. 2005); *People v. Padilla,* 113 P.3d 1260, 1261 (Colo. App. 2005).

## 2. Count One

¶ 52     Defendant contends that his conviction for count one is not supported by sufficient evidence because the jury was instructed that he must have committed the crime in Colorado to be guilty of child exploitation.[10]  "This argument fails because the sufficiency of evidence is measured 'against the elements of the offense, not against the jury instructions.'" *People v. Vigil,* 251 P.3d 442, 447 (Colo. App. 2010) (quoting in part *United States v. Bomski,* 125 F.3d 1115, 1118 (7th Cir. 1997)); *see also United States v. Morton*, 412 F.3d 901, 904 (8th Cir. 2005) (whether the jury was properly instructed does not affect a review for sufficiency of the evidence). The child exploitation statute does not require that the actor be in Colorado at the time of the criminal communication; thus, we reject

---

[10] Defendant also makes this argument as to count two, but because of our disposition on the sufficiency of the evidence for count two we only address this argument in relation to count one.

28

defendant's contention that the evidence is insufficient to support the conviction for count one.[11]

### 3. Count Two

¶ 53 Defendant's conviction for count two is based on his second interaction with "Miranda" (via instant messaging), during which he asked her to send the pictures that he thought she had taken of herself and "Lizzie" during their first conversation four days earlier. It is undisputed that during his second conversation with "Miranda," defendant did not ask her to expose or touch her own or another person's intimate parts, an essential element of the offense. § 18-3-405.4(1)(a). A request to send a picture taken previously is not equivalent to such conduct. And asking a child to send a photograph showing such conduct would not constitute an attempt to persuade the child to engage in such conduct "while communicating" with the actor, another essential element of the offense. *Id.* Thus, we conclude that defendant's conviction for count two cannot be sustained by the evidence presented at trial.

---

[11] Defendant does not contend that the evidence failed to establish the statutory elements of the offense.

## D. Mistrial

¶ 54    Defendant contends that the district court erred by denying his motion for a mistrial after a witness testified about an inadmissible matter. We conclude that the district court did not abuse its discretion.

### 1. Background

¶ 55    Defendant told Sergeant Hendricks that he had been investigated for sexual assault of a child twenty-five years earlier. Before trial, the prosecution told the court that it would not introduce evidence of the prior investigation because it would be unfairly prejudicial.

¶ 56    During defense counsel's cross-examination of Sergeant Hendricks at trial, the following exchange occurred after a discussion of Sergeant Hendricks's similar investigations:

> Defense Counsel: In this particular case you haven't come across any real victims in this time period.
>
> Sergeant Hendricks: Any real victims of [defendant]?
>
> Defense Counsel: Correct.
>
> Sergeant Hendricks: Actually during one of the interviews he admitted to me that he did have

30

a sex assault on a child, twenty to twenty-five years ago that (inaudible)

Defense Counsel: I'm talking in this time period – was my question.

Sergeant Hendricks: I'm sorry. In your time period?

Defense Counsel: This time period, yeah. You talked to him February of 2013.

Sergeant Hendricks: So, are you asking me if he had contact with any other children –

Defense Counsel: Was he contacting –

Sergeant Hendricks: At that exact same time –

Defense Counsel: Other children in February of 2013?

Sergeant Hendricks: Oh, based on his Yahoo emails and friends list, I did not find any other children.

¶ 57    After the conclusion of Sergeant Hendricks's testimony, defense counsel requested a mistrial because Sergeant Hendricks had testified to defendant's prior bad act. The district court noted that the evidence should have been excluded, and offered to give the jury a curative instruction, but denied the motion for a mistrial. Defense counsel declined the court's offer of a curative instruction.

31

## 2. Standard of Review and Applicable Law

¶ 58 Because defendant preserved this issue by moving for a mistrial, we review for nonconstitutional harmless error. Under that standard, we reverse only if there was an error that had a substantial and injurious effect or influence in determining the jury's verdict. *Krutsinger v. People*, 219 P.3d 1054, 1058 (Colo. 2009); *People v. Wilson*, 2013 COA 75, ¶ 24 ("An error is harmless if a reviewing court can say with fair assurance that, in light of the entire record, the error did not substantially influence the verdict or impair the fairness of the trial.").

¶ 59 We review a district court's decision to deny a motion for a mistrial for an abuse of discretion. *People v. Marko*, 2015 COA 139, ¶ 29. A mistrial is a drastic remedy, and we will not disturb the district court's decision absent a showing of a gross abuse of that discretion and prejudice to the moving party. *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984). A mistrial is warranted only where the prejudice caused cannot be remedied by other means. *Id.*

## 3. Analysis

¶ 60 In denying defendant's counsel's request for a mistrial, the district court characterized the context of the question as "very

ambiguous" and the officer's response as responsive to the question. We cannot say that the district court, with its superior opportunity to consider the issue, abused its discretion in so characterizing the question and answer. Further, defendant does not point to anything in the record indicating that Sergeant Hendricks was purposefully trying to include defendant's prior bad act in his testimony. Rather, it appears he was simply answering counsel's question as he understood it. Also, it was defense counsel, not the prosecutor, who elicited Sergeant Hendricks's statement. Defense counsel quickly clarified his question, got the answer he wanted, and moved on.

¶ 61    Given the weight of the admissible evidence against defendant, it is unlikely that the admission of this evidence was overly prejudicial to defendant such that it substantially affected the verdict. Further, the court offered defendant a curative instruction to cure any prejudice that could have arisen. Under these circumstances, although the evidence of defendant's prior investigation for sexual assault on a child was potentially prejudicial, we perceive no abuse of discretion in the district court's decision to deny the request for a mistrial. *See People v. Krueger,*

2012 COA 80, ¶ 72 (district court did not abuse its discretion by denying the defendant's motion for a mistrial based on a witness testifying to inadmissible evidence where the witness's reference to the inadmissible matter was brief and the court offered to give a curative instruction, which defense counsel declined); *People v. Tillery*, 231 P.3d 36, 43-44 (Colo. App. 2009) (district court's denial of mistrial was not an abuse of discretion where reference to inadmissible evidence was brief, unembellished, promptly suppressed, not repeated again before the jury, and the court gave a curative instruction), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011); *People v. Shreck*, 107 P.3d 1048, 1060 (Colo. App. 2004) (a mistrial for a witness's reference to inadmissible evidence was not warranted where the reference was brief and the district court offered a curative instruction).

## E. Probation Revocation

¶ 62    Lastly, defendant contends that the district court's revocation of his probation must be reversed because the district court did not adhere to the applicable statutory requirements. We agree.

## 1. Standard of Review

¶ 63    Because defendant did not preserve his contention, we review

it for plain error. *Hagos*, ¶ 14.  To determine whether the district

court erred, we must construe the requirements of sections 16-11-

206(1), (2) and 18-1.3-1010(2)(a), (b), C.R.S. 2015, which we do de

novo. *Romero v. People*, 179 P.3d 984, 986 (Colo. 2007).

## 2. Section 16-11-206

¶ 64    Section 16-11-206(1), (2) provides:

> (1) At the first appearance of the probationer in
> court or at the commencement of the hearing,
> whichever is first in time, the court shall
> advise the probationer as provided in section
> 16-7-206 insofar as such matters are
> applicable; except that there shall be no right
> to a trial by jury in proceedings for revocation
> of probation.
>
> (2) At or prior to the commencement of the
> hearing, the court shall advise the probationer
> of the charges against him and the possible
> penalties therefor and shall require the
> probationer to plead guilty or not guilty.

¶ 65    The People filed a probation violation complaint against

defendant because he allegedly failed to register as a sex offender.

At the initial court date on defendant's probation revocation,

defense counsel said that he had "gone over" defendant's rights with

35

defendant and that defendant wanted a hearing on his probation revocation. The district court did not advise defendant of the charges against him and possible penalties he could face. At no point did defendant expressly waive his right to an advisement.

¶ 66 Contrary to the People's assertion, defense counsel's brief, vague statement that he had "gone over" defendant's rights at the initial court date three months earlier is not sufficient to establish that defendant waived his right to be advised by the court through counsel, or that he was advised of potential penalties before the hearing. *Cf. Finney v. People*, 2014 CO 38, ¶¶ 18-19 (advisements before a hearing were sufficient to satisfy the advisement requirement where the defendant was advised of the potential penalties six separate times before the hearing); *see Craig v. People*, 986 P.2d 951, 964 (Colo. 1999) (an advisement is sufficient if the record as a whole shows that the defendant was given sufficient notice of the possible penalties associated with a guilty plea). Thus, the district court failed to adhere to section 16-11-206(2).

¶ 67 We conclude that the district court's error is plain because the statutory requirements were known to the court, and the failure to advise defendant of the possible penalties substantially undermines

our confidence in the fairness of the probation proceeding. *See People v. Pollard*, 2013 COA 31M, ¶ 40 (an error is obvious if it contravenes a clear statutory command).

### 3. Section 18-1.3-1010

¶ 68    Section 18-1.3-1010(2)(a), (b) provides:

> (a) A sex offender sentenced to probation pursuant to section 18-1.3-1004(2) is subject to arrest and revocation of probation as provided in sections 16-11-205 and 16-11-206, C.R.S. At any revocation proceeding, the sex offender's probation officer and the sex offender's treatment provider shall submit recommendations concerning the level of treatment and monitoring that should be imposed as a condition of probation if probation is not revoked or whether the sex offender poses a sufficient threat to the community that probation should be revoked. The recommendations shall be based on the criteria established by the management board pursuant to section 18-1.3-1009. If the court revokes the sex offender's probation, the court shall sentence the sex offender as provided in section 18-1.3-1004, and the sex offender shall be subject to the provisions of this part 10.
>
> (b) At a revocation hearing held pursuant to this subsection (2), the court shall consider the recommendations of the probation officer and the treatment provider, in addition to evidence concerning any of the grounds for revocation of probation specified in sections 16-11-205 and 16-11-206, C.R.S. If the court chooses not to

> follow the recommendations made, it shall
> make findings on the record in support of its
> decision.

¶ 69    The People concede that the district court revoked defendant's probation without obtaining and considering treatment and monitoring recommendations from defendant's probation officer or treatment provider as required by section 18-1.3-1010(2)(a), (b). Because a court is deemed to know these statutory requirements, the district court plainly erred by not adhering to section 18-1.3-1010(2)(a), (b). *See Pollard*, ¶ 40.

¶ 70    The error was substantial. The statute requires that new reports be written, that the district court consider them, and that the district court make findings on the record to support its decision if it departs from the recommendations in the reports. § 18-1.3-1010(2)(a), (b). None of that occurred. Contrary to the People's assertion, the fact that defendant's probation was revoked soon after his probation officer and treatment provider had provided reports for his initial sentencing does not render the error insubstantial. And in any event, there is no indication in the record that the district court considered the earlier reports when revoking defendant's probation.

¶ 71    Therefore, we reverse the district court's revocation of defendant's probation.

### III.  Conclusion

¶ 72    Defendant's conviction for count two is reversed, and the case is remanded to the district court to dismiss that count with prejudice.  The judgment is reversed as to the revocation of defendant's probation, and the case is remanded for further proceedings on the probation revocation complaint.  The judgment is otherwise affirmed.

JUDGE LICHTENSTEIN and JUDGE DUNN concur.