22CA1131 Peo v Weaver 10-31-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1131
El Paso County District Court No. 20CR3478
Honorable Catherine Mitchell Helton, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

William Arthur Weaver,

Defendant-Appellant.

JUDGEMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Grove and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Taylor J. Hoy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, William Arthur Weaver, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder as an act of domestic violence and two crime of violence sentence enhancers. We affirm.

## I.     Background

¶ 2     On June 19, 2020, Weaver and the victim, his wife Wendy Cupit, had a physical altercation that left her dead. Weaver told police that while drunk, they had a verbal argument the previous evening that escalated when Cupit assaulted, mocked, and taunted him. He left the house, then returned, and another argument ensued. The victim hit him, and in a fit of rage, Weaver tried to strangle her to death. When that didn't work, he retrieved a kitchen knife and stabbed her to death.

¶ 3     Sometime later, Weaver contacted his ex-wife, J.M.S., via Facebook Messenger, and said, "[I] just killed [my] wife" and that he was going to turn himself in. J.M.S. contacted the police, and the police responded to Weaver's home. They observed blood on the front door and saw the victim's body through a front window. The police arrested Weaver without incident and questioned him for three hours. During the interview, Weaver described his

relationship with the victim, the events leading to their argument, and how he had killed her. In additional statements that the court excluded at trial, he described his mental health, past suicide attempts, and victimization as a child at the hands of his parents.

¶ 4 The prosecution charged Weaver with first degree murder and two crime of violence counts, and the jury convicted him as charged. The trial court sentenced him to the custody of the Department of Corrections for life without the possibility of parole.

¶ 5 Weaver challenges his conviction on four grounds and alleges that the trial court erroneously (1) denied his motion to suppress evidence obtained from the overly broad and general search warrant; (2) admitted the victim's "in life" photograph; (3) admitted an exhibit containing impermissible character evidence; and (4) excluded his statements to the police concerning his mental health. He also contends that the cumulative effect of these errors requires reversal. We address and reject each of his contentions.

## II. Search Warrant

¶ 6 Relying on *People v. Coke*, 2020 CO 28, Weaver first contends that the evidence obtained from the search of his cell phone violated his constitutional rights under the Fourth Amendment to the

United States Constitution and article II, section 7 of the Colorado Constitution because the warrant was overbroad, generalized, and lacked particularity. We are not persuaded.

## A. Additional Facts

¶ 7    After the police arrested Weaver, they seized his cell phone along with two Cricket cell phones found in the house. During Weaver's interview, he gave the police the pass code to his phone and said, "You can go through it, I don't care." He also confirmed he had messaged his ex-wife and told her he had killed his wife and said he had messaged other friends with the same information.

¶ 8    The police then sought a search warrant for all three phones. In the affidavit, the detective recited Weaver's statement that he messaged his ex-wife saying he had killed his current wife and was getting ready to turn himself in, and that he had messaged others with the same information. The detective also described conversations with witnesses who knew the victim, who had seen previous injuries on her, and who were familiar with the couple's domestic violence history. Those witnesses said the victim had kicked Weaver out of the house but let him return approximately one week before the homicide.

¶ 9    The detective requested six months of data from the phones because he had reason to believe there was a history of domestic violence.  Specifically, the warrant sought the following:

- audio and video clips related to the criminal activity.

- data that may identify the owner or user of the cellular communication device(s);

- call histories, call logs and visual voicemail related to the criminal activity, as found in the cellular communication device(s);

- photographs and associated metadata related to the criminal activity, as found in the cellular communication device(s);

- texts, multimedia messages, recorded messages and subscriber information modules between the cell phone owner and co-conspirators involved in the criminal activity, as found in the cellular communication device(s);

- email messages and attachments, whether read or unread and related to the criminal activity, as found in the cellular communication device(s);

- internet browser files including, but not limited to, browser history, browser cache, stored cookies, browser favorites, auto-complete form history, and stored password(s); and

- global positioning system data including, but not limited to, coordinates, way points, and tracks.

¶ 10 Before trial, Weaver moved to suppress all evidence seized from the phones, arguing that the warrant "was unconstitutional as it was not particular, but, instead, allowed for a general exploratory search." After a hearing, the trial court denied the motion and found that while there was a lot of information contained in a cell phone, the detective had given proper reasoning for why a six-month time frame was requested. The trial court also noted that Weaver and his wife were together for three years, and that a witness said she had reason to believe domestic violence occurred as early as "several months ago."

¶ 11 Finally, the court noted that while law enforcement officers had to describe or identify the items to be searched with particularity, there was not always a specific date as to when things occurred. It found that six months was reasonable, given the evidence of a history of domestic violence between the parties.

### B. Standard of Review and Applicable Law

¶ 12    The suppression of evidence presents a mixed question of law and fact. *People v. Thompson,* 2021 CO 15, ¶ 15. We defer to the trial court's factual findings if they are supported by competent evidence, but we review the legal effect of those findings de novo. *Id.* A constitutional error requires reversal if "there is a reasonable possibility that the [error] might have contributed to the conviction." *Hagos v. People,* 2012 CO 63, ¶ 11 (quoting *Chapman v. California,* 386 U.S. 18, 24 (1967)).

¶ 13    The United States and Colorado Constitutions protect individuals against "unreasonable searches and seizures." U.S Const. amend. IV; Colo. Const. art. II, § 7. When analyzing the legality of a search, the touchstone is reasonableness. *People v. Davis,* 2019 CO 24, ¶ 15. And reasonableness generally requires a warrant. *Id.* at ¶ 16.

¶ 14    A lawful search warrant must describe with particularity both "the place to be searched" and "the things to be seized." *People v. Pacheco,* 175 P.3d 91, 94 (Colo. 2006). Particularity limits the government's discretion in examining private information and prohibits general exploratory rummaging. *People v. Seymour,* 2023

CO 53, ¶ 44. To satisfy particularity, a cell phone search warrant must include specific limitations based on (1) the type of alleged criminal activity; (2) the identity of the alleged victim; and (3) if applicable, the timeframe within which the suspected crime occurred. *People v. Herrera*, 2015 CO 60, ¶ 20; *see also Coke*, ¶ 34 (finding insufficient particularity where the warrant permitted the officers to search all texts, videos, pictures, contact lists, phone records, and any data based on ownership absent a specific or reasonable timeframe).

¶ 15 However, "a warrant doesn't lack particularity simply because it is broad." *Seymour*, ¶ 46. "Likewise, a search isn't unconstitutional simply because the government, in some lightning-fast, digital sense, very cursorily examines unrelated documents." *Id.* at ¶ 47. "Even when a warrant is adequately particularized, 'it is certain that some innocuous documents will be examined . . . to determine whether they are, in fact, among those papers authorized to be seized.'" *Id.* (quoting *Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976)).

¶ 16 The warrant's description of the property to be seized should permit the officer charged with executing the warrant to know with

a reasonable degree of certainty what should be seized. *Coke*, ¶ 34. Given modern cell phones' immense storage capacities and ability to collect and store many distinct types of data in one place, courts have recognized that cell phones "hold for many Americans 'the privacies of life'" and are, therefore, entitled to special protections from searches. *Id.* at ¶ 37 (citation omitted). And a warrant authorizing the search of a cell phone simply for general indicia of ownership violates the Fourth Amendment's particularity requirement. *See Herrera*, ¶¶ 4, 18.

### C. Analysis

¶ 17 We discern no error in the court's ruling denying Weaver's motion to suppress and conclude the warrant was sufficiently particular for three reasons. First, unlike in *Coke*, where the warrant contained no particulars about the alleged victim or when the assault occurred, the warrant here identified the victim, described the crime and when it was committed, and described a history of domestic violence between Weaver and the victim. *Herrera*, ¶ 20.

¶ 18 Second, unlike in *Coke*, where the warrant contained no time limitations, the warrant here limited the search to the six months

preceding the homicide and thus, constituted a reasonable period to document the domestic violence history described by Weaver and other witnesses.

¶ 19 Third, unlike in *Coke*, where the warrant permitted police to search for any and all information without limitation, the warrant here limited most of the data to be searched to the criminal activity described in the affidavit. And to the extent the warrant permitted a search of global positioning and internet searches beyond the crime itself, we discern no constitutional violation because the search was limited to a six-month timeframe and limited to a narrow subset of information. *Seymour,* ¶¶ 16-18, 43.

¶ 20 To the extent Weaver argues that the use of the Cellebrite software to download all information contained in the phones violated the particularity requirement, we are not persuaded. The forensic examiner explained that Cellebrite downloaded and converted the data in the phones into a readable format that was then provided to the detective. The detective then searched the data consistent with the limitations listed in the search warrant. The fact that the detective may have observed data not covered by

the warrant does not render the warrant overly broad or unconstitutional. *Seymour*, ¶ 46.

¶ 21 Accordingly, we discern no error in the court's ruling denying Weaver's motion to suppress the search.

### III. "In Life" Photograph

¶ 22 Weaver next contends the trial court erroneously admitted an "in life" photograph of the victim and reasons that any probative value was substantially outweighed by its prejudicial effect. We disagree.

### A. Additional Facts

¶ 23 Before trial, Weaver asked the prosecutor to provide notice of all "in life" photographs it planned to admit. Counsel argued any "in life" photograph lacked relevance because the victim's status as a living person was not disputed and could be established through other eyewitness testimony. Counsel further argued under CRE 403 that such photos might inflame the passions of the jury and unfairly prejudice Weaver. The prosecutor disclosed two "in life" photographs, one that depicted the victim with her children and another showing only the victim.

¶ 24 The court concluded that one "in life" photo (the one without the children) was admissible because it was relevant "to establish that the victim was alive prior to the charged incident" and was not unduly prejudicial. The court admitted the photo over the defense's objection.

### B. Standard of Review and Applicable Law

¶ 25 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Melillo*, 25 P.3d 769, 773 (Colo. 2001). An abuse of discretion occurs when a trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 26 To be admissible, evidence must be relevant. CRE 402. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. A trial court may exclude logically relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. While CRE 403's balancing test favors the admission of evidence, the rule helps preclude issues of little or cumulative probative force. *Yusem v. People*, 210 P.3d 458, 467 (Colo. 2009) (citation omitted). Unfairly

11

prejudicial evidence has "an undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *Masters v. People*, 58 P.3d 979, 1001 (Colo. 2002) (citation omitted).

¶ 27     Photographs are admissible if they depict relevant facts and are not unnecessarily inflammatory to incite the jury to unfair prejudice against the defendant. *See People v. Moreland*, 567 P.2d 355, 360 (1977). Numerous Colorado decisions have held that "in life" photographs of homicide victims are admissible. *See People v. Loscutoff*, 661 P.2d 274, 277 (Colo. 1983) (finding no abuse of discretion in admitting photographs of a murder victim and her young son, taken several months before the murder); *People v. Clary*, 950 P.2d 654, 658 (Colo. App. 1997) (finding no abuse of discretion in admitting enlarged school photograph of victim); *People v. T.R.*, 860 P.2d 559, 562 (Colo. App. 1993) (finding no abuse of discretion in admitting photographs of victim and her husband taken eight months before the victim was killed).

## C.     Analysis

¶ 28     We discern no abuse of discretion in the court's admission of the victim's "in life" photo, for two reasons.

¶ 29    First, the photo assisted the prosecution in meeting its burden to prove the victim was alive and that Weaver caused her death. *People v. McClelland*, 2015 COA 1, ¶ 49 (finding that victim's "in life" photo was relevant to proving charges of murder and reckless manslaughter).  Moreover, the photo was probative of the victim's identity because her son's testimony connected the person depicted in the photo to the deceased victim.  *See State v. Broberg*, 677 A.2d 602, 610 (Md. 1996).  Additionally, the photo was relevant to show how the victim appeared before suffering the fatal injuries.

¶ 30    We are not persuaded by Weaver's argument that, as in *McClelland*, the probative value of the photograph was substantially outweighed by the risk of unfair prejudice.  The *McClelland* division found three "in life" photos of the victim with family members unfairly prejudicial because the defendant asserted self-defense and defense of others at trial, making the victim's demeanor immediately before the shooting a crucial issue.  *Id.* at ¶¶ 38, 55.  The division concluded the jury saw "a different image than that presented by the eyewitness testimony[,]" on which the prosecution was able to "unfairly capitalize" during its opening and closing statements.  *Id.* at ¶¶ 51-55.

¶ 31    Unlike *McClelland,* the trial court here properly exercised its discretion to admit a single "in life" photo that depicted only the victim. The fact that Weaver asserted self-defense does not render the photo unfairly prejudicial given his statement that he strangled and stabbed the victim multiple times after she slapped him. Moreover, the prosecutor did not rely on the photo to elicit the jury's sympathy for the victim in closing argument.

¶ 32    Second, we are not convinced that an otherwise relevant "in life" photograph becomes inadmissible when the defendant concedes identity or the fact and cause of the victim's death. *Clary,* 950 P.2d at 658; *T.R.,* 860 P.2d at 562-63; *Wilks v. State,* 2002 WY 100, ¶ 13.

¶ 33    Accordingly, we discern no error in the admission of the victim's "in life" photograph.

## IV.    Text Message

¶ 34    Weaver next contends that the trial court erroneously admitted a text message he sent to the victim and then compounded the error when it did not permit admission of other "contextualizing" text messages, under the rule of completeness. We are not persuaded.

14

## A. Additional Facts

¶ 35 Before trial, the prosecution disclosed a text message from Weaver to the victim it intended to admit at trial that read, "I'm a little sad. I'm kind afraid you'll fall in love with Mike (is that right?) and you'll leave me. But just tell me if it happens. I'll love you forever anyway, even if we're not together."

¶ 36 Weaver objected and argued that the message was irrelevant and inadmissible under CRE 404(b). Alternatively, he argued that if the message was admitted, then he should be able to admit other text messages in the days before this message under CRE 106 and the rule of completeness.

¶ 37 Weaver sought to admit the following messages, under CRE 106:

> June 10 – Sent from Messenger
> <u>William Weaver</u>:
> You were very mean just now.
> I'm sorry I can't solve all your problems.
> I do try.  but what you really need is
> money.  So go hsve [sic] fun.
>
> June 13
> <u>Wendy Werlinger Cupit</u>:
> Sorry
> I dont [sic] remember anything.  Im [sic]
> sorry obviously I drank too much.  Please
> forgive me.

Where are you?  Please come back.

June 14 – Sent from Messenger
<u>William Weaver</u>:
I'm a little sad.  I'm kind of afraid you'll fall in love with Mike (is that right?) and you'll leave me.  But just tell me if it happens.  I'll love you forever anyway, even if we're not together.

¶ 38    The trial court granted the prosecution's request but denied Weaver's request to admit the previous messages, finding "these messages [are not] appropriate under the rule of completeness."

¶ 39    Weaver moved for reconsideration and argued the message constituted impermissible character evidence (evidence of jealousy) under CRE 404(a).  The court disagreed and found the message was not improper character evidence because it merely expressed how Weaver felt.

### B.    Standard of Review and Applicable Law

¶ 40    As stated above in Part III, we review evidentiary errors for an abuse of discretion, and we disregard an error unless it substantially influenced the verdict or fairness of the trial. *Gonzales v. People*, 2020 CO 71, ¶ 25; *Hagos*, ¶ 12.

¶ 41    Under CRE 404(a), with certain limited exceptions, "[e]vidence of a person's character or a trait of his character is not admissible

for the purpose of proving that he acted in conformity therewith on a particular occasion." Thus, a person's character may not be placed before the jury unless such person makes their character an issue. *See* CRE 404(a)(1).

¶ 42     Additionally, CRE 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character" but may be admissible for purposes such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

¶ 43     CRE 106 codified the common law rule of completeness which provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." CRE 106; *see also McLaughlin*, ¶ 4, 530 P.3d at 1207. If admitting only one part of a written or recorded statement would be unfair or misleading, the rule of completeness favors admission of the remaining parts of the statement. *Id.*

## C. Analysis

¶ 44   We discern no abuse of discretion in the trial court's admission of the text message to the victim or in its decision not to admit other text messages, for three reasons.

¶ 45   First, to the extent Weaver asserts a CRE 404(b) violation, we reject it. The message does not reflect any bad conduct, but instead, reflects Weaver's feelings at the time it was sent. CRE 404(b); *see also People v. Casias*, 2012 COA 117, ¶46.

¶ 46   Second, we are not convinced that the message constitutes character evidence, let alone bad character evidence. Contrary to Weaver's argument, it was reasonable for the trial court to conclude that the tone of the message reflects acceptance of the status of the couple's relationship, not jealousy, and was relevant to rebut Weaver's defense that he killed the victim under a sudden heat of passion. *People v. Helms*, 2016 COA 90, ¶ 48 (finding defendant's statement not admitted as bad character evidence but to rebut his defense). Moreover, the prosecution did not admit the message to show Weaver possessed a jealous character. *People v. Trujillo*, 2015 COA 22, ¶ 13. Nor did the prosecutor argue Weaver's jealous character as evidence of his guilt in closing argument.

¶ 47    Third, we conclude the message did not create a misleading impression and thus, there was no reason for the court to admit the messages that preceded it under CRE 106.  The admitted message revealed there were marital problems, and the messages before shed no additional light on those problems.  Indeed, the tone of Weaver's excluded June 10 message casts him as the jealous spouse to a much larger degree than the admitted message.  Therefore, in our view, Weaver benefitted from the exclusion of that message.  Absent the existence of a misleading impression, we discern no abuse of discretion in the court's refusal to admit the additional text messages.

## V.    Redacted Statements

¶ 48    Weaver last contends that the trial court erroneously redacted from his police interview statements he made about his state of mind and demeanor.

### A.    Additional Facts

¶ 49    Before trial, the prosecution sought to exclude statements regarding suicidal ideation and childhood trauma from Weaver's interview with the police.  During that interview, Weaver described previous victimization and said if he remained at the jail, he would

19

likely become suicidal and that he was not nearly as composed as he appeared. He explained that no one cared about him in life and that no one would care if he died. The defense argued the statements were relevant to Weaver's state of mind at the time of the homicide and the time of the interrogation.

¶ 50 The court found the statements were not relevant to what the prosecution had to prove or to Weaver's defenses. It noted that Weaver had not asserted a mental health defense and that any limited probative value they might have was outweighed by the danger of unfair prejudice.

### B. Standard of Review and Applicable Law

¶ 51 As previously stated, we review a trial court's evidentiary rulings for an abuse of discretion and any error under the nonconstitutional harmless error standard. *Campbell v. People*, 2019 CO 66, ¶ 21; *Hagos*, ¶ 12.

¶ 52 "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. But evidence of a mental disease or defect is only admissible when a defendant enters

20

a not guilty by reason of insanity plea. *People v. Moore*, 2021 CO 26, ¶ 44. Further, a person may use "[d]eadly physical force" if he "reasonably believes a lesser degree of force is inadequate" and if he "has reasonable ground to believe, and does believe, that he . . . is in imminent danger of being killed or of receiving great bodily injury." § 18-1-704(2)(a), C.R.S. 2024. Therefore, self-defense considers both the reasonable belief and the actual belief of the defendant. *People v. Darbe*, 62 P.3d 1006, 1010 (Colo. App. 2002).

### C.    Analysis

¶ 53    We conclude that all but one of the statements were properly redacted, for three reasons. First, Weaver defended the case under a self-defense theory, which requires examining a defendant's state of mind at the time of the act. Weaver does not explain how feeling suicidal *after* the killing was relevant to or supported that theory. Thus, we agree with the trial court that the statements were not relevant to this defense theory.

¶ 54    Second, we are not convinced that the statements were necessary to rebut the prosecution's argument that the killing was deliberate and intentional. The jury heard Weaver's description to the police that he acted out of a sudden heat of passion and in self-

21

defense, and he told the police about all his actions between the time the victim died and the time the police arrived at his house. The fact that Weaver felt suicidal after the killing does not make it more or less likely that he acted deliberately or under a sudden heat of passion. And, as noted by the trial court, Weaver never endorsed a mental health defense or pleaded not guilty by reason of insanity.

¶ 55 Nevertheless, of the excluded statements, the one concerning his demeanor during the interview — that he was not as composed as it seemed — was arguably relevant to rebut the prosecution's argument that he was calm, cool, and collected and, therefore, acted deliberately in killing the victim. But even assuming the court erred in excluding this statement, we conclude it was harmless and does not require reversal because the record contains overwhelming evidence of deliberation from Weaver's own description of the crime.

¶ 56 Finally, Weaver has not explained, nor can we discern, how childhood trauma he suffered years earlier related to the events in this case. Accordingly, we discern no error in the court's exclusion of these statements.

## VI. Cumulative Error

¶ 57    Finally, because we have found that no errors occurred, we necessarily reject Weaver's cumulative error argument. *People v. Walton*, 167 P.3d 163, 169 (Colo. App. 2007) (in the absence of multiple errors whose effect can be compounded, cumulative error does not exist).

## VII. Disposition

¶ 58    The judgment is affirmed.

JUDGE GROVE and JUDGE LUM concur.